ANDREA HOFFART, PERSONAL REPRESENTATIVE OF THE ESTATE OF C. ELIZABETH LEMON, DECEASED, APPELLANT, V. DENNIS L. HODGE, APPELLEE.

567 N.W.2d 600

Filed July 1, 1997. No. A-95-1328.

William A. Wieland, of Healey & Wieland Law Firm, for appellant.

Raymond E. Walden and Mark E. Novotny, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

In this action, the estate of C. Elizabeth Lemon seeks to recover for wrongful death and predeath damages upon the basis of the alleged medical malpractice of the defendant, Dr. Dennis L. Hodge. The estate maintains that Hodge negligently failed to diagnose a lump in Lemon's breast as cancer during two early visits and that when Lemon's cancer was correctly diagnosed several months later, the time for successful treat-

ment had passed. In his defense, Hodge maintains that he was not negligent; that at the time of Lemon's first visits, Lemon's cancer had progressed past the point where Lemon could have been successfully treated; and, somewhat inconsistently, that Lemon was contributorily negligent in not returning in 2 months after the initial visits, as he had directed her to do. The jury entered a verdict for Hodge. On appeal, the estate maintains that the trial court should not have instructed the jury on contributory negligence. We conclude that the evidence does not support a finding that Lemon's failure to return, as allegedly directed by Hodge, could have been a proximate cause of her death and that, therefore, the trial court erred in instructing the jury on contributory negligence. Accordingly, we reverse, and remand for a new trial.

## SUMMARY OF EVIDENCE

Lemon was a 40-year-old accountant residing and practicing in Lincoln, Nebraska, in 1989; she died on May 17, 1995, as the result of breast cancer. On September 26, 1989, Lemon contacted Hodge's office and reported to his nurse that the night before, she had found a hard, marble-sized lump in the outer middle portion of her left breast. Hodge, an obstetrician-gynecologist (OB-GYN), examined her on October 5, 1989.

At trial, Hodge could not specifically recall the visit and testified that he had only a vague recollection of Lemon. Hodge's procedure during this visit was reconstructed from his testimony about his examination of Lemon, from the records he and his staff made at the time of the examination, and from testimony about his usual practices. Hodge testified that upon examining Lemon on October 5, 1989, he found a 1-centimeter marble-sized lump. Because Lemon was menstruating, Hodge suspected that the lump was a cyst. Hodge ordered a mammogram, which was performed by a radiologist on October 9. The radiologist's report stated that the breast was "[n]egative bilateral" and that the "[p]alpable mass must still be evaluated on a clinical basis." Hodge testified that x-ray reports frequently contain this direction and that he asked Lemon to return for reevaluation.

Hodge further testified that Lemon returned for a second visit on October 26, 1989, and that he reexamined her. Hodge's

office notes reflect Hodge's impression that Lemon's lump was "vague now, can't hardly feel." Hodge testified that the condition he found at that time did not disclose a definite area to either aspirate or biopsy, because when he described it as vague, he meant, "I can't hardly feel it."

Lemon's deposition was introduced at trial. By this deposition, she testified that when she saw Hodge on October 26, 1989, he told her that "the results were negative, of the mammogram. And that he didn't see any further followup at that time; to see him in a couple of months." Hodge testified, "Um, I would have said, we need to check this in two months and make an appointment and tell the girls out front that we need an appointment to check in two months." Lemon testified that she asked Hodge what she should be watching for "in this period of time" and that he told her that if the lump changed in size or became painful or sensitive to "the touch," she should notify him. Lemon also testified that when she left the office that day, she had no further anxiety and that she felt she had nothing to worry about unless there was a change in the size or sensitivity of the lump. She continued to personally check her breast "often." She also testified that on previous occasions involving an appointment for a pap smear or other concerns, Hodge's office initiated the appointment by waiting for her with an appointment card as she came out of his office or by calling her on the telephone. This practice was not followed on this occasion.

In late April, Lemon began to feel pain in her breast, and she called Hodge's office on April 27, 1990. She returned for further examination on May 21. Upon examination, Hodge noted, "still lump, same she says." Hodge then referred Lemon to a surgeon for a biopsy. On June 4, 1990, the surgeon removed a 1.5-centimeter mass, which was found to be malignant. Lemon underwent a modified radical mastectomy, radiation therapy, chemotherapy, and cell harvesting for a possible bone marrow transplant. Lemon died of breast cancer on May 17, 1995; her personal representative, Andrea Hoffart, maintains this action.

At trial, expert witnesses were introduced both by Lemon's estate and by Hodge on the issues of negligence and contributory negligence. Most of the controversy concerned whether the alleged negligence of Hodge or the alleged contributory negli-

gence of Lemon was a proximate cause of Lemon's death. The estate called two OB-GYN's, Dr. Manford M. Oliphant, Jr., and Dr. William H. Hindle, and an oncologist, Dr. William A. Robinson, to testify as expert witnesses. Dr. Guy M. Schropp, an OB-GYN, and Dr. David W. Bouda, an oncologist, testified for Hodge. Since none of the witnesses' qualifications were questioned, we shall not summarize their qualifications.

Oliphant testified with a reasonable degree of medical certainty that Hodge had failed to meet the standard of care on both October 5 and 26, 1989. Oliphant testified that on both occasions, Hodge needed to determine whether the mass in Lemon's breast was cancerous, and that in order to do this, the standard of care required Hodge to aspirate or biopsy the mass. Oliphant also testified that in October, the lump was "a solid cancer," which stays the same size or grows larger, and that Hodge was incorrect when he noted that the lump had become smaller on October 26.

Oliphant further testified that if Hodge had wanted Lemon to come back in 2 months, Hodge had the responsibility to make sure Lemon made an appointment and that she returned as directed.

Hindle agreed that Hodge had not met the standard of care. He testified that on October 5 and 26, 1989, Lemon had "an undiagnosed dominant breast mass which in all cases may possibly be a cancer so it [was] imperative" that it be definitively diagnosed by "[a]spiration or biopsy." Hindle testified that the x-ray report referring to a "palpable mass" meant there was something in Lemon's breast which could be identified and which needed to be evaluated clinically. Hindle also testified that a doctor cannot tell whether a lump is cancerous by feeling it and that waiting 2 months, or "[w]atchful waiting[,] is not appropriate." Hindle testified that there was no evidence in the record that Lemon had a cyst on October 5 which got smaller by October 26 and then went away, and that then the cancer appeared, as claimed by Hodge.

Robinson, the oncologist, testified that in June 1990, Lemon's cancer had spread to 4 of 16 lymph nodes. Based on this fact and the size of Lemon's tumor, Robinson testified that in his opinion, had the diagnosis been made in October and

therapy carried out, it was more likely than not that she would have survived the breast cancer and would have been cured. He opined that the cure rate of breast cancer as described by the record in October is about 90 percent. He testified that with reasonable medical probability, Lemon's cancer was present in her left breast on October 5, 1989. He testified, "I know how long it takes cancers to grow. I know if it was there in June of 1990 that it absolutely had to be there in October of '89. There is no doubt. That's not a controversy." He also testified that assuming that Lemon's tumor was 1 centimeter in October, as testified by Hodge, and that there was no involvement of the lymph nodes in October, "the cure rate at that point is around 90 percent." He testified that in June 1990, Lemon's chances of survival had decreased to about 40 percent.

Schropp testified that on October 5, 1989, Hodge "did the appropriate exam and the appropriate course in ordering the mammogram." He did not think that Hodge should have aspirated the mass on that date, because doctors frequently see such lumps or masses during women's menstrual cycles that go away, and if doctors aspirated every lump, they would be doing a lot of unnecessary aspirations. He also testified that in his opinion, Hodge was not required to do an ultrasound or a biopsy on October 5, 1989.

Schropp testified that Hodge also met the standard of care on October 26, 1989, and that he was not required to do anything further because the "cyst" was changing and getting smaller, and therefore it could be assumed that it not a cancerous lesion. Schropp further testified that he would have been confident, with the cyst going away, that he was doing things properly during the examination. Schropp opined that by following up in 2 months, Hodge was probably doing more than others would have done. Schropp testified that other doctors would have assumed that since the lump was going away, it was cystic and nothing to worry about.

Schropp testified that he believed that the cancer was present in October, but that it was either too small to feel or obscured by a cyst. He testified that when Hodge told Lemon to return in 2 months, she had the responsibility to make the appointment for a return visit.

Bouda testified that Hodge appropriately ordered a mammogram on October 5, 1989, and that "[i]t was appropriate not to order any other tests," since "he thought it was a cyst and he was going to follow it over time with a mammogram and a return visit . . . ." Bouda also stated that Hodge was not required to do anything further on October 26 because his examination showed that the lump was not growing or staying the same and that asking Lemon to return in 2 months was a "cautious step." Bouda testified that it was appropriate for Hodge to ask Lemon to return in 2 months and that it was Lemon's responsibility to make an appointment in approximately 2 months, although he stated that "if I were Dr. Hodge, I would have scheduled an appointment for the patient in two months."

Bouda differed from the estate's expert on Lemon's chances of survival for the relevant periods. Bouda testified that when Lemon was diagnosed with cancer in June, "[h]er prognosis without treatment, without chemotherapy would have been somewhere around 20 percent or less to live five years." He also testified that "[i]f there was cancer in the left breast October of '89 which was the same as the one in May of '90, I would say the prognosis was no different." He testified that a delay in treatment would not have made any difference

> because this patient's age was 40, the type of tumor that was present in this patient was high grade, three over three with nuclear deviation, it all indicated the tumor was very fast growing and would more likely metastisize [sic]. So I don't think the delay from October of '89 to June of '90 made a difference.

The estate adduced evidence that would support an award of damages for wrongful death, predeath damages, and burial costs, but the issues in this appeal do not require a summary of such evidence. The dispute in this appeal does not concern the various elements of damages which might be compensable if liability is determined in the estate's favor, and therefore, for brevity of expression, we shall refer to Lemon's death as though it encompasses all the damages.

The trial court instructed the jury that the estate claimed that Hodge was negligent in failing to timely aspirate the lump; in failing to timely biopsy the lump; in failing to timely refer

Lemon to an appropriate medical specialist to examine, diagnose, and remove the lump; in failing to advise Lemon of the accuracy rate of mammograms; and in failing to utilize a system to schedule patients for reexamination. The court also instructed the jury that Hodge claimed that Lemon was contributorily negligent by failing to schedule a followup visit, as he had instructed. The court instructed the jury on comparative negligence and instructed the jury that negligence that was more than slight would prevent Lemon from recovering. The court did not define negligence, but it did define professional negligence. After hearing all of the evidence, the jury entered a verdict for Hodge.

## ASSIGNMENT OF ERROR

On appeal, the estate alleges that the trial court erred in instructing the jury on Hodge's affirmative defense of contributory negligence over the estate's objection.

## STANDARD OF REVIEW

A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *German v. Swanson*, 250 Neb. 690, 553 N.W.2d 724 (1996).

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996).

## ANALYSIS

The estate argues that it was prejudicial error for the court to submit the issue of contributory negligence to the jury (1) because any negligence on the part of Lemon could not have been the proximate cause of her death, since her conduct was neither "concurrent" nor "cooperating," brief for appellant at 8, with Hodge's negligence and (2) because there is no evidence that any alleged negligence on the part of Lemon was the proximate cause of her injuries.

*Concurrent Negligence.*

The issue of concurrent negligence arises only if it is assumed that Hodge was negligent in October 1989 and that

Lemon was negligent in not returning in 2 months. The estate argues that these two acts of negligence could not have been concurrent causes of Lemon's death and that, therefore, an instruction on contributory negligence was not proper, even if medical evidence otherwise established that Lemon's failure to return in 2 months was a cause of her death. The estate bases its position on *Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 459 N.W.2d 178 (1990). The *Jensen* court made the following statement: " 'A plaintiff is contributorily negligent if (1) the plaintiff fails to protect himself or herself from injury; (2) *the plaintiff's conduct concurs and cooperates with the defendant's actionable negligence*; and (3) the plaintiff's conduct contributes to the plaintiff's injuries as a proximate cause.' " (Emphasis supplied.) *Id.* at 9, 459 N.W.2d at 183. The estate's argument relies most heavily on the words that are emphasized above; that is, it argues that Lemon's alleged negligence did not concur and cooperate with Hodge's alleged negligence.

Applying its interpretation of the above rule, the estate argues that there is no evidence to prove that Hodge's negligence in October 1989 was affected by Lemon's failure to return in January 1990 or that Hodge's conduct would have been any different if Lemon had returned in January 1990, and that even if Lemon's conduct was negligent, her conduct was not concurrent and cooperating, as required.

First of all, we observe that the above-quoted rule is not applied only to medical malpractice cases, but to all negligence cases. See *Mix v. City of Lincoln*, 244 Neb. 561, 508 N.W.2d 549, (1993), and *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 502 N.W.2d 80 (1993), for two recent examples.

The estate seems to maintain that because the alleged negligent acts of Hodge and Lemon did not happen at the same time, they cannot be concurrent and cooperating. A theoretical discussion of the meaning and application of proximate cause and the terms used by courts in the effort to apply and explain proximate causes of an injury that is or could be caused by the acts of two persons would not be helpful. However, we do point out the following: "Concurrent negligent acts which may impose liability on two individuals acting separately need not necessarily occur simultaneously if they are so related as

directly to contribute to the accident." 65 C.J.S. *Negligence* § 110 at 1192 (1966). Obviously, the same principle would apply to the concurrent negligent acts of a defendant and a plaintiff.

We believe that the concurrent acts referenced in the above rule refer to the separate negligent events concurring and cooperating to bring about the injury complained of, rather than any notion that the two events must happen at the same time or that they cause one another.

The facts in *Jensen, supra,* do not support the estate's position. Jensen died of cardiac arrest due to pulmonary embolism after having been admitted to the hospital for treatment of acute thrombophlebitis. He was considerably overweight, and his weight problem apparently contributed to his thrombophlebitis and his death. Jensen's estate sued the hospital and the doctor for wrongful death, claiming that Jensen had not been properly cared for while in the hospital. Before being admitted to the hospital, Jensen had been admonished by his doctor to lose weight. The trial court instructed the jury on contributory negligence on the basis that Jensen had failed to follow the doctor's reasonable and proper advice to lose weight. The *Jensen* court reviewed several cases from Nebraska and other states and stated what we understand to be the rule of the *Jensen* case:

> [T]o be considered as and constitute contributory negligence in a medical malpractice action, a patient's negligence must have been an active and efficient contributing cause of the injury, must have cooperated with the negligence of the malpractitioner, must have entered into proximate causation of the injury, and must have been an element in the transaction on which the malpractice is based. Accordingly, in a medical malpractice action, the defense of contributory negligence is inapplicable when a patient's conduct provides the occasion for medical attention . . . which later is the subject of a medical malpractice claim . . . .

*Jensen,* 236 Neb. at 15, 459 N.W.2d at 186-87.

It seems clear that Jensen's failure to lose weight merely created a condition upon which his doctor's negligence could act, and this situation is clearly different from the instant case, in which Lemon failed to seek further examination. The most

obvious distinction between the two situations is that if Lemon was negligent she was negligent after Hodge, not before. Lemon's negligence could not have created a condition, as Jensen's negligence was held to have done.

In the case *Kaspar v. Schack*, 195 Neb. 215, 237 N.W.2d 414 (1976), the trial court instructed the jury on the defendant doctor's allegation of contributory negligence because of the deceased patient's failure to follow the doctor's instructions, her failure to advise the doctor of changes in her condition, and her failure to return for an examination as directed. Interestingly, in *Kaspar*, the doctor scolded the patient about her weight gain and warned of its potential consequences, but she continued to gain weight, which contributed to her death from toxemia. The *Kaspar* case is a rather clear example of a patient's alleged negligence occurring after a doctor's negligence in such a way as to be a contributing cause. For other examples of failure to return for further examination, see Annot., *Medical Malpractice-Patient's Negligence*, 100 A.L.R.3d 723-30 (1980).

In the case *Mecham v. McLeay*, 193 Neb. 457, 227 N.W.2d 829 (1975), the court stated that a medical patient can be contributorily negligent in failing to see a doctor as instructed, because the failure violates the standard of care which a patient is obligated to exercise for his or her own safety. It seems clear that a patient's failure to see a doctor as directed can create a jury question on contributory negligence if the evidence establishes that such failure was a contributing cause of the patient's injury. See *Jensen, supra*.

Assuming that Hodge was negligent in his examination in October and that if he had discovered the breast cancer in October, Lemon's chances of survival would have been better than her chances were when the cancer was discovered in June, and assuming further that Lemon was negligent in not returning for a followup examination in 2 months as directed by Hodge and that Lemon's chances of survival would have been better if the cancer had been discovered in December or January rather than in June, then the negligence of both Hodge and Lemon may be said to have cooperated to produce her death. If the jury should find that Lemon was negligent in not returning to Hodge for further treatment, that negligence could be a proximate cause of her death.

*Medical Evidence Regarding Contributory Negligence.*

■ This issue is concerned with whether the medical evidence would support a finding that Lemon's chances of survival would have been better if she had followed Hodge's directions to return in 2 months. The submission of an issue on which the evidence is insufficient to sustain an affirmative finding is generally prejudicial and results in a new trial. *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994). When contributory negligence is pled as a defense, but there is no evidence to support it, it is prejudicial error to submit to the jury the issue of contributory negligence. *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996).

■ In a medical malpractice action, a defendant may raise the issue of contributory negligence as an affirmative defense, and the defendant has the burden to prove contributory negligence. *Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 459 N.W.2d 178 (1990); *Kaspar, supra.* Generally, the defense of contributory negligence has been recognized in a medical malpractice action when the patient has (1) failed to follow a medical instruction, (2) refused or neglected prescribed treatment, or (3) intentionally given erroneous, incomplete, or misleading information which is the basis for medical care or treatment of the patient. *Jensen, supra.* See, also, *Kaspar, supra.*

Concerning this issue, the estate argues that Hodge did not establish proximate cause because there is no medical testimony to establish (1) the status of Lemon's cancer in January 1990 (when Hodge maintains Lemon was directed to return), (2) the effect the delay from October to January or to June would have had on Lemon's chances of survival, or (3) what Lemon's survival rate would have been in December 1989 or January 1990.

Bouda's opinion was that Lemon had a 20-percent chance of survival in both October 1989 and June 1990, but he did not give an opinion on Lemon's chance of survival in December or January. Schropp did not testify on Lemon's chances of survival and denied that cancer was present in October. Robinson testified that Lemon had a chance of survival of 90 percent if the cancer had been properly diagnosed and treated in October 1989 and a 40-percent chance when it was found in June 1990. The estate argues that there is no evidence of what Lemon's

chances of survival would have been if the cancer had been discovered and properly treated at some time after October but before June, when it was diagnosed, particularly in January, when she would have returned had she followed the directions Hodge alleges he gave her.

Hodge does not dispute the estate's summary of the direct evidence on this point but argues that all of the doctors testified that the cancer grew as time passed and that as it grew, the risk of spreading increased, and that it is impossible to predict when a cancer might spread in a particular individual. Hodge argues that the experts disagreed only on how fast the cancer might have grown. On this basis, Hodge argues that "the jury could have found, by early January the tumor more likely than not was still contained and treatable and did not metastasize to a point that survivability was lost until some time during the ensuing five months." Brief for appellee at 30.

We have found no Nebraska cases dealing with how specific evidence must be for a litigant to utilize the lessening of a chance of survival or lost opportunity to survive as the basis for a claim or defense. The following cases concern claims that women who died from breast cancer were contributorily negligent by not returning for a reexamination or by not reporting a change as directed. The cases demonstrate the approaches other courts have used. It appears from these cases that each case must be decided upon its own unique evidence.

In *Grippe v. Momtazee*, 705 S.W.2d 551 (Mo. App. 1986), the evidence showed that a cancer victim has a marked decrease in his or her chances of survival after the cancer metastasizes. In *Grippe*, the evidence showed that when the woman, who had failed to return for an examination, was finally examined, her cancer had barely metastasized. Thus, the court held that evidence that the cancer had just metastasized was sufficient to support the conclusion that had she returned as directed, the cancer would have been discovered before it metastasized, increasing the woman's chance of survival, and that thus, the jury could determine that the woman's negligence in failing to return was a proximate cause of her death.

In *Roers v. Engebretson*, 479 N.W.2d 422 (Minn. App. 1992), an expert testified to facts which allowed the jury to conclude

that the woman's 9-month delay in returning to her doctor decreased her chances of survival by 75 percent. The court held that this evidence was sufficient to direct the jury on the woman's contributory negligence.

In *Barenbrugge v. Rich*, 141 Ill. App. 3d 1046, 490 N.E.2d 1368 (1986), the court held that the evidence did not require an instruction on contributory negligence, since there was no evidence showing the stage of the woman's cancer at the time the doctor maintained that the woman should have reported her condition.

In *Chudson v. Ratra*, 76 Md. App. 753, 548 A.2d 172 (1988), the court held that general statistical evidence on the survival rates of breast-cancer patients in each of the four stages of breast cancer was sufficient to allow the jury to determine that the patient would have had a better-than-even chance of survival had she reported back, thus justifying the defense of contributory negligence.

■ The question of the form and the sufficiency of the evidence to support a finding of an increase in or a lessening of Lemon's chances to survive was not directly raised in the trial court, and thus we do not specifically consider that question. However, it seems clear that when damages are predicated on the loss of any chance, evidence which establishes only that a person's chance of survival has increased or decreased over some time period, without any evidence as to the amount of increase or decrease at the significant time, is not adequate. The Nebraska Supreme Court has not accepted or rejected any specific terminology to be used by an expert in opining on the loss of chance of survival from a given event, and other jurisdictions have accepted and rejected numerous expert opinions as significant on this subject, see Annot., *Causation-Loss of Chance*, 54 A.L.R.4th 10, 30-35 (1987).

It does not appear that any particular terminology has evolved to express the necessary degree of increase or decrease in a person's chance to survive. The adequacy of the evidence necessarily depends upon the facts of the case and the applicable medical opinions. However, we conclude that the evidence in this case is insufficient because it would require the jury to guess on the issue of contributory negligence, which would

require it to guess on whether such negligence proximately caused Lemon's death.

The evidence in this case did establish that, left untreated, cancer grows as time passes; that the rate of growth increases as time passes; and that as the growth of cancer increases, a person's chance of survival decreases. Thus, the inference is that if Lemon had a chance to survive in October, then that chance to survive naturally decreased during the period that the cancer went undetected and untreated. Hodge's contention is that the evidence was sufficient to allow the jury to determine that by not returning in January, Lemon herself contributed to a late diagnosis, since in June, Lemon had, according to Robinson, only a 40-percent chance of survival compared to a 90-percent chance in October.

Even if it could be reasonably inferred that Lemon's chances of survival decreased somewhat between October and January, there is no evidence to show the extent of that decrease, that is, whether it was slight, significant, et cetera. There is no evidence to show that in January, Lemon's cancer had progressed to any particular level or, stated another way, to show whether her chances of survival in January were still 90 percent (as the jury could have found they were in October) or that Lemon's chances had already decreased to the 40-percent level that the evidence would indicate they were in June, when the cancer was finally diagnosed.

The evidence in this case did not allow the jury to determine, short of guesswork, to what degree, if any, Lemon's chances to survive decreased between January and June and did not give the jury a method to extrapolate that from the percentages in evidence. Even if the evidence might be deemed sufficient to show some decrease in Lemon's chance of survival between January and June, it does not allow the jury to determine if that decrease in chance to survive was significant. Without evidence to provide some basis for a jury to determine the impact of Lemon's not returning in January on her ultimate chances of survival, her failure to return in January should not have been submitted to the jury as evidence of contributory negligence.

Because we remand for a new trial, we note that the trial court, in its instructions, defined professional negligence but

did not define ordinary negligence. We believe that the trial court should have defined ordinary negligence. We urge the trial court in instructing the jury on comparing the contributory negligence it might find of Lemon with the negligence of Hodge to be mindful of the following:

"Both courts and text writers have emphasized, however, that the availability of a contributory negligence defense in a malpractice case is limited because of the disparity in medical knowledge between the patient and his doctor and because of the patient's right to rely on the doctor's knowledge and skill in the course of medical treatment. . . .

"The relevant issue . . . which must be considered . . . is whether and to what extent plaintiffs may be charged with acting unreasonably in the face of certain statements and advice of defendant doctors."

*Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 10-11, 459 N.W.2d 178, 184 (1990) (quoting *Martineau v. Nelson*, 311 Minn. 92, 247 N.W.2d 409 (1976)).

We, therefore, set aside the verdict and decision for Hodge and remand the cause to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.