ANDREA HOFFART, PERSONAL REPRESENTATIVE
OF THE ESTATE OF C. ELIZABETH LEMON,
DECEASED, APPELLANT,
v. DENNIS L. HODGE, APPELLEE.
609 N.W.2d 397

Filed April 18, 2000. No. A-99-113.

William A. Wieland and Jeffry D. Patterson, of Healey & Wieland Law Firm, for appellant.

Mark E. Novotny and Robert A. Mooney, of Lamson, Dugan & Murray, for appellee.

Rick G. Wade and Theodore L. Kessner, of Crosby, Guenzel, Davis, Kessner & Kuester, for amicus curiae.

SIEVERS and INBODY, Judges, and BUCKLEY, District Judge, Retired.

Sievers, Judge.

This is the second appearance in this court of this medical malpractice action involving the diagnosis of breast cancer. In our earlier opinion, *Hoffart v. Hodge*, 5 Neb. App. 838, 567 N.W.2d 600 (1997), we reversed a jury verdict for the defendant, Dr. Dennis L. Hodge. Hodge had offered evidence to support his claim that his patient, C. Elizabeth Lemon, was contributorily negligent for failing to return for reexamination of her breast as he alleged to have instructed her. We reversed, because the evidence was such that the jury, absent guesswork, could not determine to what degree, if any, Lemon's chance to survive her ultimately fatal breast cancer was impacted by her failure to report for reexamination by Hodge. This appeal addresses the retrial after our remand.

## FACTUAL BACKGROUND

A comprehensive statement of the factual background in this case is set forth in *Hoffart v. Hodge, supra,* and while there has been a new trial, our examination of that trial record reveals that the core of the evidentiary presentation in the second trial is the same as that in the first trial. Thus, we refer the interested reader to our first opinion and limit our opinion here to a basic factual outline.

Lemon was a 40-year-old accountant residing in Lincoln who found a lump in her left breast and contacted Hodge's office on September 26, 1989. Hodge, an obstetrician-gynecologist (Ob-Gyn), examined her on October 5. Hodge's memory of the visit was vague, at best, and he relied primarily on his records to testify that he found a 1-centimeter marble-sized lump in Lemon's breast on October 5. Because she was menstruating, Hodge suspected the lump was a cyst. Nonetheless, a mammogram was ordered and performed by a radiologist on October 9. The radiologist's report stated the breast was " '[n]egative bilateral' " and the " '[p]alpable mass must still be evaluated on a clinical basis.' " Hodge's testimony was that he asked Lemon to return for reevaluation, which she did on October 26, and his notes from that examination reflect his impression that the lump was " '[v]ague now, can't hardly feel.' " Hodge's evidence was that he would have told her to make an appointment in 2 months to

be checked again. Lemon testified by deposition that she asked Hodge what she should be watching for "in this period of time," and he told her that if the lump changed in size or became painful or sensitive to the touch, she should notify him. Lemon's testimony was that when she left the office that day, she had no further anxiety and felt she had nothing to worry about unless there was a change in the size or sensitivity of the lump. Lemon continued to check her breast, and in late April 1990, she began to feel pain in the breast and called Hodge's office on April 27. She returned for further examination on May 21. At this point, Hodge referred Lemon to a surgeon for a biopsy, who removed a 1.5-centimeter mass which was found to be malignant. Lemon underwent a modified radical mastectomy, radiation therapy, chemotherapy, and cell harvesting for possible bone marrow transplant. Despite these efforts, Lemon died of breast cancer on May 17, 1995, and this action is brought by her personal representative, Andrea Hoffart. However, throughout our opinion, we will use Lemon's name when referencing the plaintiff in this case.

Lemon's evidentiary presentation involved expert witnesses who testified generally that the standard of care in this situation required that Hodge diagnose the lump present on October 5 and 26, 1989, by either aspiration or biopsy. Aspiration is a procedure where a needle is inserted into the lump to bring out fluid, which will occur if a cyst is present and which will make the mass disappear. But, if no fluid is withdrawn, a more serious situation is present, requiring referral to a surgeon for biopsy of the lump. The evidence was that neither the physical examinations in October nor the mammogram provided a diagnosis of the lump and that a normal mammogram provides a false sense of security because patients think it is a guarantee that cancer is not present, when in fact, false negatives occur in approximately 20 percent of all mammograms.

Lemon introduced opinion evidence from an expert that Hodge's treatment did not conform to the standard of care because Hodge did not make a diagnosis of the breast mass in early October 1989 and that there was no reason to delay securing a diagnosis. The opinion was that Hodge's clinical impression of a cyst should have been confirmed by aspiration or

biopsy or that, alternatively, Lemon should have been referred to a surgeon. Lemon also introduced evidence that Hodge's treatment fell below the standard of care on the second visit of October 26, because there was still a mass that had not been diagnosed. Lemon's expert oncologist testified that it was medically probable that in October, Lemon had stage I breast cancer without lymph node involvement, and that had the tumor been removed then, she would have had an 85- to 90-percent survival chance.

Hodge produced expert witnesses who testified that his examination and diagnosis of Lemon met the standard of care and that mammography was the best modality for evaluating the breast. Dr. David Bouda, whose qualifications and testimony will be discussed in more detail in the analysis portion of our opinion, testified about cancer and the doubling of tumors. Bouda's testimony was that by extrapolation, Lemon had cancer in her lymph nodes long before Hodge saw her in October 1989 and that the approximately 200-day delay in diagnosing her breast cancer did not change the outcome. Hodge testified on his own behalf that the lump felt cystic upon palpation on October 5, that he would have told her about the failure rates for mammograms when she came back to the office as part of his normal procedure, and that he told her she should return in 2 months or sooner if there were changes in the lump. He testified that he did not see Lemon after October 26, until May 21, 1990, at which point she presented a more defined lump and that a biopsy was ordered. The jury returned a verdict in Hodge's favor, and Lemon appeals.

## ASSIGNMENTS OF ERROR

Lemon asserts six assignments of error, which slightly restated are as follows: (1) The trial court erred in receiving Hodge's testimony as to his habit and routine about advice to patients without proper foundation; (2) there was error in allowing Bouda's testimony as to the standard of care applicable to Hodge when there was no evidence to establish Bouda's qualifications to testify about the standard of care for an Ob-Gyn in Lincoln; (3) the trial court erred in refusing to allow cross-examination of Hodge's expert medical witnesses concerning their

bias or prejudice because they were qualified physicians under the Nebraska Hospital-Medical Liability Act (Act), Neb. Rev. Stat. § 44-2801 et seq. (Reissue 1998); (4) the trial court erred in refusing to allow Lemon to pursue discovery as to the legal advice provided to Michael Ward, administrator of the Excess Liability Fund (Fund), Neb. Rev. Stat. § 44-2829 et seq. (Reissue 1998), so as to establish a conflict of interest existing, in the words of Lemon's attorney, between "defendant's counsel, counsel for the underlying liability carrier, the Fund, and the rights of victims of medical negligence"; (5) the trial court erred in refusing to allow Lemon to pursue discovery about the administration of the Fund in its dealings with Hodge's underlying liability insurance carrier; and (6) the trial court erred in refusing to allow Lemon to pursue discovery as to settlement practices existing in the administration of the Fund and the participation of Hodge's underlying liability insurance carrier.

## STANDARD OF REVIEW

■ In proceedings where the Nebraska rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999); *Talle v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 823, 572 N.W.2d 790 (1998).

■ Admission of expert witness testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld in the absence of an abuse of discretion. *Woollen v. State, supra*; *Childers v. Phelps County*, 252 Neb. 945, 568 N.W.2d 463 (1997).

An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993).

## ANALYSIS

*Habit Evidence.*

■ Lemon first asserts that the trial court abused its discretion by allowing Hodge to testify, over objection, as to his habit or routine of advising his patients about mammogram failure

rates. Habit evidence is relevant to show conformity therewith in a specific instance pursuant to Neb. Rev. Stat. § 27-406 (Reissue 1995), which provides:

> (1) Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

> (2) Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

At the outset, we note that our analysis is limited to situations where a party attempts to prove habit by way of opinion rather than by specific instances of conduct. This is because nowhere in the record did Hodge attempt to prove his habit based on specific instances of conduct in similar situations. Rather, Hodge simply offered his opinion as to his policy of informing patients of failure rates in support of the notion that he informed Lemon in conformity with his policy. (For an analysis of proving habit by specific instances of conduct, see 64 A.L.R.4th 567 (1988).)

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules, and judicial discretion is a factor only when the rules make such discretion a factor in determining admissibility. *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998). The precise contours of how frequently and consistently a behavior must occur to rise to the level of habit cannot be easily defined or formulated, and as with other areas of relevancy, admissibility depends on the trial judge's evaluation of the particular facts of the case. See *State v. Pharr*, 115 Wis. 2d 334, 340 N.W.2d 498 (1983). See, also, 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 406 (2000). We hold that the exercise of judicial discretion is implicit in determinations of relevancy and admissibility under § 27-406, and as a result, the trial court's decision will not be reversed absent an abuse of discretion. See *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998) (exercise of judicial discre-

tion is implicit in determinations of relevancy which will not be reversed absent abuse of discretion). Under § 27-406, the trial court determines whether the predicate evidence necessary to prove conduct by habit has been introduced. As noted above, habit may be shown by opinion or specific instances of conduct. It is within the trial court's discretion to determine if there is sufficient foundation for a witness to give his or her opinion about an issue in question. See *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998).

Lemon asserts that Hodge's testimony about what he would have told Lemon was improperly admitted, arguing: "When a witness, for whatever reason, fails to recall and relate specific facts relating to the witnesses' past conduct, to allow the witness, without foundational predicate, to then testify in detail about habit and routine, i[s] nothing more than an invitation to self-serving fantasy." Brief for appellant at 23.

■ Habit evidence is relevant because such evidence makes it more probable that the person acted in a manner consistent with that habit. *Steinberg v. Arcilla*, 194 Wis. 2d 759, 535 N.W.2d 444 (Wis. App. 1995). At the outset, we must recognize the reality that a doctor cannot be expected to specifically recall the advice or explanation he or she gives to each and every patient he or she sees and treats.

Hodge stated that he sees approximately 140 patients per week in his practice. Out of the thousands of patients he has treated, it is likely that the great majority of patient visits are routine, at least for the doctor, which over time substantially decreases the likelihood that the doctor will recall a specific conversation with a specific patient. Thus, evidence of habit may be the only vehicle available for a doctor to prove that he or she acted in a particular way on a particular occasion, and, therefore, proof of habit may be highly relevant.

Hodge stated that on October 5, 1989, he was aware of the accuracy or reliability of mammograms. He described the failure rate as being 10 to 15 percent. When asked if he had a "policy" of advising his patients of mammogram failure rates, he responded that he did and that he explains the failure rate of mammograms to his patients. When asked about the specifics of his policy of advising patients of the failure rate, Hodge stated:

"We would advise them it is not 100 percent. There is a failure rate and that it can be 10 to 15 percent not accurate."

Hodge then testified at length concerning mammograms, ultrasounds, aspiration, and biopsy when diagnosing breast lumps. Hodge stated: "I can just say what we routinely would talk to patients about." He agreed that his sources of recollection concerning what he and Lemon discussed would be his chart, his routine, and his memory.

In *Bloskas v. Murray*, 646 P.2d 907 (Colo. 1982), the court found that evidence of a doctor's habit or custom of routinely advising patients about to undergo hip or knee replacement surgery of the risks of infection and loosening of the artificial joint was admissible as circumstantial evidence to show that he had given the same advice to the plaintiff, even though he had no independent recollection of ever so advising the plaintiff. Another example of habit evidence is found in *Reaves v. Mandell*, 209 N.J. Super. 465, 507 A.2d 807 (1986). Again, in *Reaves*, the doctor could not recall the specifics of any conversation he had with the plaintiff. Yet, the court allowed the doctor to testify about the specific information which he said he invariably gave to patients with a fibroid uterus, such as the plaintiff, based on a routine developed over 15 years of practice. The evidence was admitted to show that he gave the plaintiff the same information on a particular occasion.

In the instant case, Hodge admitted that he had no specific recollection of what he told Lemon on any specific occasion. He stated that he would not have told Lemon that history, palpation, mammograms, and ultrasounds do not diagnose cancer and that he would not use the word "cancer" when informing patients about mammogram failure rates, because words such as "cancer" can scare patients. Hodge testified that in his practice, which involved examining 140 patients per week, a small percentage of which were being seen because of a recent mammogram, he had a policy of informing patients of mammogram failure rates and that because of that policy, he would have informed Lemon as well. As evidence that she was told of the need to be reexamined, Hodge relied upon the fact that she was seen on October 26, 1989, which was after the mammogram and after she had been contacted on October 9 about her mammo-

gram results. We are not unaware that in Hodge's testimony, he admitted that the advice about mammogram results is sometimes given by one of his nurses and it is at this point that failure rates are discussed. He also admitted that the information on Lemon's chart showed that "DS, the nurse . . . is making the call and informing [Lemon] about the mammogram." But § 27-406 speaks of the evidence of habit of a person or "of the routine practice of an organization." And, we conclude that a medical practice involving doctors and nurses can be "an organization." See *Hall v. Arthur*, 141 F.3d 844 (8th Cir. 1998) (habit evidence of doctor's office properly admitted as evidence of routine practice of organization). Thus, the fact that a nurse apparently was the person within Hodge's "organization" to talk with Lemon, at least immediately after the mammogram, does not foreclose, because of a foundational objection as was made here, proof of conduct by conformity to habit or routine practice.

Nonetheless, this case presents a close question of whether sufficient foundation was laid so that the trial court could properly find that Hodge's testimony concerning his "policy" of informing patients of mammogram failure rates was admissible under § 27-406. While the foundation laid in this particular instance was not thoroughly or artfully presented, it is clear that Hodge did testify to a policy, including utilizing his nurses, of advising mammogram patients of their results, the "failure rates" of the procedure, and the need for reexamination. Therefore, we cannot say the trial court abused its discretion in allowing Hodge to offer his opinion as to his policy, i.e., habit of informing patients of mammogram failure rates. The lack of detail concerning regularity (which involves frequency and consistency), specificity, and involuntary response, which are the hallmarks of proof of habit by specific instances rather than by opinion, does not render the opinion evidence inadmissible. See 64 A.L.R.4th 567 (1988). The absence of evidence of such hallmarks, as here, and the reliance on mere opinion may well mean that the evidence is weak and easily attacked by cross-examination or in argument to the jury, but it does not preclude admission of habit proved by opinion as § 27-406 clearly allows proof of habit by opinion. While we agree with Lemon that Hodge's opinion about his policy is self-serving, such argument

goes to the weight and credibility of the opinion rather than its admissibility. Therefore, the admissibility of habit evidence by opinion, as contrasted to specific instances of conduct, is reviewed for abuse of discretion. Finding no abuse of discretion in allowing Hodge's habit testimony, we consider Lemon's next assignment of error.

*Expert Witness.*

Lemon next asserts that the trial court erred in receiving Bouda's testimony as to the standard of care applicable to Hodge, an Ob-Gyn, when there was no evidence to establish his qualification to so testify. Lemon argues that because Bouda is not an Ob-Gyn and does not have the same credentials and experiences as the other expert witnesses who testified at trial, he is not properly qualified to express an opinion as to the standard of care applicable to Hodge's treatment and diagnosis of Lemon's breast cancer. As in any medical malpractice action, one of the issues to be determined by the jury is whether Hodge complied with the applicable standard of care when providing treatment and care for Lemon. Section 44-2810 provides the definition of professional malpractice for health care providers:

> Malpractice or professional negligence shall mean that, in rendering professional services, a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities. In determining what constitutes reasonable and ordinary care, skill, and diligence on the part of a health care provider in a particular community, the test shall be that which health care providers, in the same community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances.

The appropriate standard of care is based on an analysis focusing on what care a physician would ordinarily exercise under similar circumstances in the same or similar community while engaged in the same or a similar line of work. The record shows, and the parties agree, that the standard of care applicable in this

case, a national standard, is not unique to Lincoln, where Hodge practices. The issue raised by the assignment of error is whether Bouda's qualifications show that he has done the same or similar lines of work as Hodge sufficient to allow him to offer an expert opinion on the standard of care applicable to Hodge. Lemon argues that because Hodge and the other testifying experts are all Obs-Gyns, only an Ob-Gyn is qualified to express an opinion as to the standard of care required when a physician treats a patient for breast cancer. We do not agree, nor do we believe § 44-2810 requires such a conclusion.

Neb. Rev. Stat. § 27-702 (Reissue 1995) provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact . . . to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." There is no exact standard for determining when one qualifies as an expert, and a trial court's factual finding that a witness qualifies as an expert will be upheld on appeal unless clearly erroneous. *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991); *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990). It is within the trial court's discretion to determine if there is sufficient foundation for a witness to give his or her opinion about an issue in question. *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). A trial court's ruling in receiving or excluding an expert's opinion which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Id.* Whether one qualifies as an expert depends on the factual basis or the reality underlying the witness' claim to expertise rather than upon a title. *Main Street Movies v. Wellman*, 251 Neb. 367, 557 N.W.2d 641 (1997); *State v. Reynolds, supra.*

Bouda stated that he was board certified in internal medicine, which is the care of the various chronic diseases found in adults. Bouda specializes in oncology, the treatment of cancer. His extensive medical education includes training in the treatment and diagnosis of breast diseases. Although Bouda has never done a residency or internship in obstetrics or gynecology, he has personally diagnosed and treated breast lumps, including those with the diagnosis of breast cancer. Based on his education, training, and experience, Bouda stated that he was familiar

with the standard of care for gynecologists for the diagnosis and treatment of breast lumps in Nebraska in 1989. Bouda is also familiar with the various types of breast cancer.

Based on this testimony, plus further extensive foundational testimony which we do not reproduce here, the trial court, over objection, allowed Bouda to express his expert opinion as to whether Hodge's treatment and diagnosis of Lemon's breast lump met or exceeded the applicable standard of care. Whether Bouda is an obstetrician or gynecologist may be relevant to his qualifications, but it is not determinative, because equally important, and probably more so, is the question of whether he has sufficient experience in the diagnosis and treatment of lumps in the breasts of women. In short, does his work experience parallel Hodge's? The record shows that it does, because Bouda is an oncologist with extensive experience in treating and diagnosing breast cancer. The standard of care is not based on the title of the physician, but, rather, on the substance of the treatment.

> Testimony of qualified medical doctors cannot be excluded simply because they are not specialists in a particular school of medical practice. [Citation omitted.] Instead, experts or skilled witnesses will be considered qualified if, and only if, they possess special skill or knowledge respecting the subject matter involved so superior to that of persons in general as to make the expert's formation of a judgment a fact of probative value.

*Ashby v. First Data Resources*, 242 Neb. 529, 535, 497 N.W.2d 330, 335 (1993). Bouda has engaged in the same or a similar line of Hodge's work, which is at issue here, treating and diagnosing breast lumps. We note that his experience and ability to do so were not disputed or challenged, it is only that lack of a "title" which is implicated in this assignment of error. Therefore, Bouda's expert opinion was properly admitted. The fact that he was not formally an Ob-Gyn is only a matter of weight to be discussed with the jury, if Lemon's counsel desired. Lemon's second assignment of error is without merit.

*Cross-Examination for Expert Witness Bias.*

Lemon next asserts the trial court erred in refusing to allow cross-examination of Hodge's medical experts concerning their

participation in the Act. The Act, described in its simplest form, creates an excess liability insurer in which physicians may elect to participate. See § 44-2801 et seq. Participating physicians are required to maintain $200,000 base liability coverage. See § 44-2824(1). Any settlement or judgment in excess of the base coverage is then paid from the Fund. See § 44-2825(1). Participating physicians pay a surcharge on their base liability policy premiums, which is used to maintain the Fund. See § 44-2829. Lemon argues that because a portion of any judgment awarded to Lemon might be paid by the Fund, which in turn could cause an increase in surcharges, Hodge's experts' participation in the Act is a proper subject for questioning to show financial bias pursuant to Neb. Rev. Stat. § 27-411 (Reissue 1995), which reads:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

The Fund is clearly "insur[ance] against liability."

In a recent medical malpractice case, the Nebraska Supreme Court held that "a plaintiff must establish that an expert has more connection to a defendant's insurer than that of the policyholder or member in order for the evidence to be admissible." See, *Reimer v. Surgical Servs. of the Great Plains*, 258 Neb. 671, 676, 605 N.W.2d 777, 781 (2000), citing *Mills v. Grotheer*, 957 P.2d 540 (Okla. 1998); *Warren v. Jackson*, 125 N.C. App. 96, 479 S.E.2d 278 (1997); *Otwell v. Bryant*, 497 So. 2d 111 (Ala. 1986); and *Mendoza v. Varon*, 563 S.W.2d 646 (Tex. Civ. App. 1978). "[A]bsent evidence that a witness has a direct interest in the outcome of the litigation, such as an agent, owner, or employee of the defendant's insurer, the potential for bias is too remote and is outweighed by the prejudice its admission would cause." 258 Neb. at 676, 605 N.W.2d at 781.

Lemon has shown no connection other than the fact that Hodge and his expert witnesses are subject to the same premium surcharge which is used to maintain the Fund. Applying the rule adopted in *Reimer v. Surgical Servs. of the Great Plains, supra,*

we find the trial court did not abuse its discretion when it did not allow cross-examination as to Hodge's expert witnesses' participation in the Act.

*Discovery Issues.*

Lemon's next four assignments of error assert that the trial court erred in refusing to allow discovery into the administration of the Fund. The record shows that on December 15, 1997, Lemon filed a motion to disqualify Hodge's counsel. Lemon argued that Hodge's counsel not only represented Hodge, but the Fund as well, thereby creating a conflict of interest sufficient to require disqualification. In support of the motion, Lemon sought to take the deposition of Ward. The Department of Insurance filed a motion to quash and sought a protective order claiming that the notice was vague, was overbroad, and sought to obtain documents protected by the attorney-client privilege. The trial court sustained the department's motion, in part, limiting Lemon's discovery to the issue of whether an attorney-client relationship existed between Hodge's counsel and the Fund. Lemon took Ward's deposition on April 14, 1998. Ward was instructed by his counsel not to answer nearly all of the questions asked on the basis that they were outside the limited scope of discovery allowed by the trial court's order. Lemon then filed a motion to compel discovery after which the trial court ordered Ward to answer three questions concerning whether Ward had received legal advice from any attorney representing the underlying carrier or Hodge. Ward answered all three questions in the negative. Lemon asserts the trial court erred in limiting discovery into the attorney-client relationship, if any, between the Fund, the underlying carrier, and Hodge's counsel, on the theory, as we understand it, that such would "subvert the purpose of the [Act] and benefit the underlying liability insurance carrier to the detriment of the fund, citizens of the state, and victims of medical negligence." Brief for appellant at 42. Lemon concludes that "the fund was created for the benefit of the public. It should be administered in that fashion." *Id.* at 48. Those comments aside, Neb. Ct. R. of Discovery 26 (rev. 1996) sets forth the general provisions regarding allowable discovery. Under rule 26(b)(1):

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

Generally, the control of discovery is a matter for judicial discretion. *Gallner v. Gallner*, 257 Neb. 158, 595 N.W.2d 904 (1999); *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991).

We focus on what we see as the clear answer to Lemon's claims about discovery. The issues for trial in this case were whether Hodge was negligent in his treatment of Lemon and, if so, whether such negligence proximately caused Lemon injury or death. Lemon argues that the Fund "has deviated from the original concept as provided by the Act" and that "the present administration of the Act and the [Fund] is contrary to the public interest." Brief for appellant at 43. These contentions, and the others we have quoted from Lemon's brief, do not relate to the core issues for trial. Nor has counsel revealed to us how extensive discovery about the Fund, its administration, or settlement of claims would have led to the discovery of admissible evidence. In short, insurance coverage issues do not relate to liability and proximate cause issues, and, therefore, discovery beyond the disclosure of the extent of the coverage is limited. See *Walls v. Horbach*, 189 Neb. 479, 203 N.W.2d 490 (1973). Whether Lemon's quoted assertions are true or merely display counsel's dissatisfaction with the Legislature's statutory scheme in the malpractice area bears no relevance to the core issues to be resolved at trial. Therefore, we find that the trial court did not abuse its discretion in limiting Lemon's discovery concerning the administration of the Fund, including discovery about settlement of claims. We find no merit to the assignments of error concerning discovery.

## CONCLUSION

Finding no merit to any of the assignments of error, we affirm.

AFFIRMED.