BORLEY STORAGE AND TRANSFER CO., INC., APPELLANT,
v. WARREN R. WHITTED, JR., APPELLEE.
710 N.W.2d 71

Filed March 3, 2006.    No. S-04-708.

John H. Marsh, of Knapp, Fangmeyer, Aschwege, Besse & Marsh, P.C., for appellant.

Bradley D. Holbrook, of Jacobsen, Orr, Nelson, Wright & Lindstrom, P.C., for appellee.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This legal malpractice action is before this court for the second time. In the first appearance, we determined that the district court erred in entering partial summary judgment in favor of the plaintiff and therefore reversed and vacated the judgment and remanded the cause for further proceedings. *Borley Storage & Transfer Co. v. Whitted*, 265 Neb. 533, 657 N.W.2d 911 (2003). Following remand, the cause was tried to a jury and a verdict was returned in favor of the defendant attorney, Warren R. Whitted, Jr. Borley Storage and Transfer Co., Inc. (Borley Storage), the plaintiff below, appeals from the judgment entered on the verdict. We affirm.

## I. BACKGROUND

Borley Storage was a family business operated by Harry Borley and Maxine Borley. On December 10, 1982, Borley Storage entered into an agreement to sell its business to Borley Moving and Storage, Inc. (Borley Moving). Borley Moving was a new entity formed by the longtime manager of Borley Storage, Dennis Bauder, and his wife, Wanda Bauder, who were the sole shareholders of the new corporation. Borley Moving had no assets prior to the sale.

Whitted represented Borley Storage in the seller-financed transaction and prepared all of the documents related to the sale of the business. Pursuant to the terms of the purchase agreement dated December 10, 1982, Borley Moving agreed to pay a purchase price of $250,000, payable in monthly installments and bearing interest at the rate of 12 percent per annum. Payments were to begin on February 1, 1983, and continue through January 1, 1993. The purchase agreement also provided that the Bauders would execute a promissory note for the purchase price. A promissory note dated January 3, 1983, in the amount of $250,000 payable to Borley Storage was executed by Dennis Bauder, by Wanda Bauder, and by Dennis Bauder in his capacity as president of Borley Moving. The note provided that the said parties "jointly and severally" promised to pay the principal amount with interest at 12 percent in 119 monthly installments commencing on February 1, 1983. It further provided that "[i]f the makers' [sic] fail to pay any installment when due, then the entire unpaid principal balance, together with accrued interest, shall at the option of the holder, immediately become due and payable without notice."

Pursuant to the purchase agreement and to provide security for the transaction, Borley Moving granted Borley Storage a security interest in the personal property, rolling stock, and accounts receivable associated with the business. Borley Moving also granted Borley Storage a first deed of trust in certain real property. Whitted prepared and filed a mortgage and a financing statement to perfect the security interests in the personal property and accounts receivable. The financing statement was filed on July 12, 1983. By operation of law, this security interest lapsed on July 12, 1988, 5 years after its filing, because no continuation statement was timely filed.

Borley Moving defaulted on the purchase agreement in 1991, and Borley Storage thereafter attempted to recover by foreclosing on the real estate and recovering the collateral. Borley Moving filed bankruptcy in 1993. The bankruptcy court approved a reorganization plan in 1995, and Borley Storage's claim was valued at $308,000. Approximately $140,000 was secured by the real estate and rolling stock. However, because a

second creditor had filed a financing statement with respect to the personal property and Borley Storage failed to file a continuation statement prior to the expiration of the 5-year period, Borley Storage lost its priority with respect to the personal property and accounts receivable. Instead, the second creditor received approximately $64,000 based on its secured interest. Borley Storage never sought recovery from the Bauders on the promissory note.

In this malpractice action, Borley Storage alleged that Whitted negligently failed to file or advise its officers of the need to file the continuation statement necessary to preserve the priority of its security interest in the personal property and accounts receivable associated with the business, thus depriving Borley Storage of security valued at $106,000. Whitted denied that he was negligent, and he alleged as an affirmative defense that Borley Storage failed to mitigate its claimed damages. After trial, a jury entered a verdict in favor of Whitted. Following entry of judgment on the jury verdict and denial of its motion seeking alternative forms of postjudgment relief, Borley Storage perfected this timely appeal. We moved the appeal to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

Additional facts relevant to the analysis are included therein.

## II. ASSIGNMENTS OF ERROR

Borley Storage assigns, restated, that the district court erred in (1) instructing the jury that any failure to mitigate damages was a complete bar to its recovery; (2) failing to give certain tendered jury instructions; (3) failing to direct a verdict on the issue of mitigation of damages; (4) instructing the jury that the Bauders were, as a matter of law, personally liable on the promissory note; (5) instructing the jury that the failure to file a continuation statement did not relieve the Bauders of their obligation on the promissory note; (6) overruling its foundational objection to Whitted's testimony regarding his habit or routine with respect to representing sellers of businesses; (7) receiving Dennis Bauder's personal financial statements over objection, and (8) overruling its motion to set aside the verdict

or judgment, motion for new trial, and motion for judgment notwithstanding the verdict.

## III. STANDARD OF REVIEW

■ A trial court's decision to admit habit evidence based on opinion under Neb. Rev. Stat. § 27-406 (Reissue 1995) is reviewed for an abuse of discretion. See *Hoffart v. Hodge*, 9 Neb. App. 161, 609 N.W.2d 397 (2000).

■ In reviewing a claim of prejudice from instructions given or refused, an appellate court must read the instructions together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error. *Pribil v. Koinzan*, 266 Neb. 222, 665 N.W.2d 567 (2003); *Nauenburg v. Lewis*, 265 Neb. 89, 655 N.W.2d 19 (2003).

## IV. ANALYSIS

### 1. Comakers' Liability on Promissory Note

Several of the issues presented in this appeal relate to the undisputed fact that Borley Storage did not make a claim against the Bauders on the promissory note which the Bauders executed personally in connection with their purchase of the business. Borley Storage argues that any such claim would have been defeated by an impairment of collateral defense and that, in any event, the Bauders' potential liability on the note was not relevant to Borley Storage's claim against Whitted. Borley Storage thus argues that the district court erred in receiving evidence on and instructing the jury about the promissory note and its relationship to Whitted's mitigation of damages defense.

### (a) Impairment of Collateral

Over the objection of Borley Storage, the district court instructed the jury as follows:

> The Court has determined that as a matter of law, Dennis Bauder and Wanda Bauder are co-makers of a promissory note and as such they are jointly and serverly [sic] liable to satisfy the indebtedness created by the promissory note.
>
> The Court has futher [sic] determined as a matter of law, that the failure to file the continuation statement, did not

relieve Dennis Bauder and Wanda Bauder of this obligation to pay the indebtedness created by the promissory note.

Borley Storage argues that the failure to file a continuation statement preserving its security interest relieved the Bauders of their personal liability on the note. This argument is based upon Neb. U.C.C. § 3-606(1) (Reissue 1980), in effect in Nebraska at the time of the sale, which provided: "The holder discharges any party to the instrument to the extent that without such party's consent the holder . . . (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Generally, this provision of the Uniform Commercial Code has been interpreted to discharge only the obligations of those parties who sign a negotiable instrument in the capacity of a surety. See, generally, Annot., 61 A.L.R. 5th 525 (1998); 21 Shepard's Causes of Action 145, § 23 (1990). This is because § 3-606 is generally regarded as a protection for a surety's right of subrogation. See 61 A.L.R. 5th, *supra*. However, a minority of jurisdictions take the position that all parties to a negotiable instrument, including nonaccommodating makers and comakers, can avail themselves of the defense of discharge. See, *Crimmins v. Lowry*, 691 S.W.2d 582 (Tex. 1985); *Bishop v. United Missouri Bank of Carthage*, 647 S.W.2d 625 (Mo. App. 1983); *Southwest Florida Production v. Schirow*, 388 So. 2d 338 (Fla. App. 1980); *Rushton v. U.M.&M. Credit Corp.*, 245 Ark. 703, 434 S.W.2d 81 (1968).

Although this court has not specifically addressed this split in authority, we have implicitly followed the majority view that the impairment of collateral defense is not available to the maker or comaker of a promissory note. In *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 419, 520 N.W.2d 189, 194 (1994), we rejected a claim that a party was entitled to assert "the special suretyship defenses set forth in Neb. U.C.C. § 3-606" based in part upon our prior determination that the party "was a principal obligor on the note and not an accommodation party." See, also, *First State Bank v. Peterson*, 205 Neb. 814, 816-17, 290 N.W.2d 634, 635 (1980) (holding that under § 3-606, "a guarantor who is a party to the instrument is discharged by an unjustifiable impairment of collateral" and that under "a general rule of

suretyship," a surety is "discharged only pro tanto by any wrongful loss or release of security"). Moreover, the official comment to former § 3-606 specifically stated that the "suretyship defenses here provided" are available "to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so."

Borley Storage argues that the Bauders were accommodation parties and therefore would have been entitled to assert an impairment of collateral defense in any action to enforce their liability on the promissory note. We note that when the Bauders executed the note in 1983, Neb. U.C.C. § 3-415 (Reissue 1980) was in effect and defined the contract of an accommodation party with respect to a negotiable instrument. Although provisions relating to accommodation parties are now codified at Neb. U.C.C. § 3-419 (Reissue 2001), we apply the law in effect at the time of execution of the promissory note in determining whether or not the Bauders were accommodation parties.

The question of whether a party is an accommodation maker or a principal obligor on an instrument is a question of intent. *Ashland State Bank v. Elkhorn Racquetball, Inc., supra; Marvin E. Jewell & Co. v. Thomas*, 231 Neb. 1, 434 N.W.2d 532 (1989). Section 3-415 defined an accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." We have held that under this definition, an accommodation party is a surety who by lending its name to the maker of the note, in a sense, guarantees that in the event of default by the principal obligor, the accommodation party will be liable. *Marvin E. Jewell & Co., supra.* In examining this issue, we stated:

> The critical question in determining whether someone intended to lend his name to another is whether the alleged accommodation party was required to sign the instrument to enable the alleged principal obligor to obtain credit. Several courts have stated that a major consideration in determining accommodation party status is the fact that the lender refused to make the loan unless the accommodation party was a party to the instrument.

*Id.* at 6, 434 N.W.2d at 535. Evidence of the effect of the transaction is also relevant to the issue of intent, as "[t]he best, if not controlling, evidence of the intent of the parties to an agreement is the parties' interpretation of the agreement as evidenced by their actions in performance of the agreement." *Id.*

Borley Storage relies on *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63 (Ind. 1995), in support of its argument that the Bauders were accommodation parties entitled to assert an impairment of collateral defense. In that case, two individuals executed a promissory note reflecting a bank loan in their capacities as officers of a corporation and also in their individual capacities. They also executed separate guaranty agreements. After the corporation declared bankruptcy, the bank initiated an action against the individuals, and the individuals sought to assert an impairment of collateral defense based on allegations that the bank had allowed a security interest to lapse. The trial court and an intermediate court of appeals determined that the individuals were accommodation parties entitled to assert the defense with respect to the promissory note, and this determination was not challenged in the appeal to the Indiana Supreme Court. Rather, the opinion of that court focused solely on the issue of whether, under Indiana common law, a party executing a guaranty agreement may assert an impairment of collateral defense. Thus, the opinion provides no reasoning or detailed factual basis for the determination that the individuals signed the note as accommodation parties, and we do not find it persuasive on that issue in this case.

Instead, we look to the record in this case, beginning with documents drawn in connection with the sale of the business. The purchase agreement recites: "The purchase price shall be represented by a promissory note executed by Buyers, Dennis Bauder and Wanda Bauder, husband and wife." The promissory note was signed first by Dennis Bauder, then by Wanda Bauder, and finally by Dennis Bauder in his capacity as president of Borley Moving. These parties are referred to collectively in the note as "makers." In his deposition testimony received at trial, Harry Borley agreed that the Bauders signed as makers of the note. Whitted testified that the parties' agreement was for the Bauders to be personally liable on the note, that the Bauders

signed as comakers, and that the purpose of the note was to make the Bauders jointly and severally liable for Borley Moving's obligations. There is no evidence that the Bauders would have had any right of recourse against Borley Moving if they had paid the note personally. As a result of the sale, all of the assets of Borley Storage were transferred to Borley Moving. The Bauders were the sole shareholders of Borley Moving, which had no assets prior to the sale. Neither the language of the promissory note nor any extrinsic evidence suggests that the Bauders signed as sureties, guarantors, or in any other form of accommodation status. The only reasonable inference which can be drawn from the record is that the Bauders were principal obligors of the promissory note, not accommodation parties, and thus could not have asserted an impairment of collateral defense to a claim on the note. Accordingly, the district court did not err in determining as a matter of law that the Bauders were personally liable on the note notwithstanding the failure to file a continuation statement, and in so instructing the jury.

### (b) Mitigation of Damages

Borley Storage contends that the district court erred in receiving certain evidence on, and instructing the jury with respect to, the affirmative defense of mitigation of damages. Borley Storage argues that as a secured creditor, it had a right to choose whether to sue on the promissory note or proceed against the collateral. See *Ceres Fertilizer, Inc. v. Beekman*, 209 Neb. 447, 308 N.W.2d 347 (1981). Borley Storage contends that it "clearly elected to recover its collateral, and did not then, nor has it since, ever sought a dollar judgment against any maker of the note." Brief for appellant at 15. It characterizes the instant action for attorney malpractice as "merely an extension" of its efforts to recover the value of its collateral and argues that Whitted, who is alleged to have caused the loss of collateral, should not be permitted "to dictate the manner in which the secured creditor seeks to recover its losses upon default." Brief for appellant at 16.

However, this is not a proceeding to enforce a creditor's remedy under the Uniform Commercial Code. Rather, it is a legal malpractice action governed by principles of tort law. In civil legal malpractice actions, a plaintiff alleging attorney negligence

must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005).

We examined these elements in the context of a claim that an attorney negligently failed to obtain security for a debt owed to his client in *Stansbery v. Schroeder*, 226 Neb. 492, 412 N.W.2d 447 (1987). In that case, the client sued the attorney for the unpaid balance of a loan, alleging that the attorney negligently failed to obtain personal guaranties from shareholders of the debtor corporation. The client recovered a judgment against the attorney, but appealed on the ground that the judgment did not include accrued interest. The attorney cross-appealed, assigning error in the refusal of the trial court to instruct on contributory negligence and failure to mitigate damages. This court did not reach the mitigation of damages issue because it concluded under the plain error doctrine that there was a failure of proof with respect to proximate cause. We reasoned that even if a jury could have concluded that the attorney negligently failed to obtain the guaranties, the client was not automatically entitled to the unpaid principal and interest on the loan, but, rather, was required to present evidence that the failure to obtain the guaranties proximately caused the loss. We concluded that there was a failure of proof necessitating reversal with directions to dismiss because there was no evidence that obtaining the shareholders' guaranties would have prevented the loss.

Applying these principles to the instant case, it is clear that the lapse of the security interest in 1988 did not automatically result in any damage to Borley Storage. Had the Bauders, as comakers, made timely payments on the note, the lapse of the security interest would have been of no consequence. See *Widemshek v. Fale*, 17 Wis. 2d 337, 117 N.W.2d 275 (1962) (holding no actual damage resulted from attorney's failure to obtain first mortgage to secure indebtedness where client recovered full amount of indebtedness). The loss of the security interest deprived Borley Storage of one of its remedies in the event of default by Borley Moving, but it did not extinguish the alternative remedy of enforcing the Bauders' personal liability on the

note. With this background, we turn to the specific assignments of error pertaining to mitigation of damages.

### (i) Jury Instructions

Borley Storage assigns error with respect to two jury instructions given by the court over Borley Storage's objection. Instruction No. 2 provided in relevant part:

> In the affirmative defense that the Plaintiff failed to mitigate its damages, the burden is upon the Defendant to prove, by the greater weight of the evidence, each and all of the following:
>
> a) That the Plaintiff failed to take reasonable steps to minimize its damages;
>
> b) That the Plaintiff's damage occurred as a result of its failure to take reasonable steps to minimize its damages.

The same instruction then stated, "If the Defendant has met his burden of proof that the Plaintiff failed to take reasonable steps to minimize its damages, then your verdict must be for the Defendant. If the Defendant has not met its burden of proof, you must disregard the affirmative defenses."

Instruction No. 15 further provided:

> If you assess damages, then you must consider the Defendant's claim that the Plaintiff failed to take reasonable steps to minimize its damages by pursuing Dennis Bauder and/or Wanda Bauder co-makers of the promissory note. The Defendant is not liable for any damages that could have been prevented if the Plaintiff had done so. The Defendant has the burden of proving that the Plaintiff failed to take reasonable steps to minimize its damages.

Borley Storage advances two reasons why the trial court erred in giving these instructions. First, it contends that the instructions should not have been given because it had no obligation to pursue its remedy against the Bauders in order to mitigate the damages sought from Whitted. Second, Borley Storage argues that instruction No. 2 conveyed the incorrect notion that failure to mitigate was an absolute defense.

As noted above, whether and to what extent Borley Storage could have recovered the indebtedness by proceeding against the Bauders on the promissory note was relevant to the determination of what loss, if any, Borley Storage sustained as a result of the

lapsed security interest attributed to the alleged malpractice. While this could be viewed as a question of causation, it is clear from the record that the parties and the trial court considered this issue as being within the affirmative defense of mitigation of damages. As a general rule, an appellate court disposes of a case on the theory presented in the district court. *Kubik v. Kubik*, 268 Neb. 337, 683 N.W.2d 330 (2004); *American Fam. Mut. Ins. Co. v. Hadley*, 264 Neb. 435, 648 N.W.2d 769 (2002). We do so here.

Under the doctrine of avoidable consequences, which is another name for the failure to mitigate damages, a wronged party will be denied recovery for such losses as could reasonably have been avoided, although such party will be allowed to recover any loss, injury, or expense incurred in reasonable efforts to minimize the injury. See, *Gottsch Feeding Corp. v. Red Cloud Cattle Co.*, 229 Neb. 746, 429 N.W.2d 328 (1988); *Welsh v. Anderson*, 228 Neb. 79, 421 N.W.2d 426 (1988). A plaintiff's failure to take reasonable steps to mitigate damages bars recovery, not in toto, but only for the damages which might have been avoided by reasonable efforts. *Gottsch Feeding Corp v. Red Cloud Cattle Co., supra.* A plaintiff's duty to mitigate damages arises only after a defendant's negligence. *Welsh v. Anderson, supra.*

The general rule is that whenever applicable, the Nebraska Jury Instructions are to be used. *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004); *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). Instruction No. 15 given by the district court is taken nearly verbatim from NJI2d Civ. 4.70 and is a correct statement of the law. Borley Storage alleged that Whitted negligently failed to take steps to prevent the security interest from lapsing in 1988 and that it discovered the facts on which its claim is based in October 1991, several months after Borley Moving had defaulted. Thereafter, Borley Storage made no attempt to enforce the Bauders' obligation on the promissory note. These facts were sufficient to warrant the giving of instruction No. 15.

Instruction No. 2, which consisted of the statement of the case, outlined the claims and defenses asserted by the parties and instructed the jury that if Whitted met his burden of proof with respect to his mitigation of damages defense, "then your

verdict must be for the Defendant." Read in isolation, there is tension between this statement and the rule that a plaintiff's failure to take reasonable steps to mitigate damages bars recovery, not in toto, but only for the damages which might have been avoided by reasonable efforts. See *Gottsch Feeding Corp. v. Red Cloud Cattle Co., supra.* However, in reviewing a claim of prejudice from instructions given or refused, an appellate court must read the instructions together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error. *Pribil v. Koinzan,* 266 Neb. 222, 665 N.W.2d 567 (2003); *Nauenburg v. Lewis,* 265 Neb. 89, 655 N.W.2d 19 (2003). Read together, instructions Nos. 2 and 15 clearly inform the jury that it could find Whitted liable only for those damages which could not have been avoided by reasonable steps to mitigate. We conclude that the district court did not err in giving these instructions.

■ Although Borley Storage assigns that the district court erred in refusing to give certain of its tendered jury instructions, its brief includes no argument of this issue. Errors that are assigned but not argued will not be addressed by an appellate court. *Genthon v. Kratville,* 270 Neb. 74, 701 N.W.2d 334 (2005); *Nebraska Liq. Distrib. v. Nebraska Liq. Cont. Comm.,* 269 Neb. 401, 693 N.W.2d 539 (2005).

*(ii) Financial Statements*

Borley Storage next assigns error with respect to the receipt into evidence of two financial statements signed by Dennis Bauder reflecting his assets and liabilities in 1990 and 1991. Borley Storage objected to the exhibits on grounds of hearsay, foundation, relevance, and probative value outweighed by unfair prejudice. Foundational requirements with respect to authenticity are satisfied because Dennis Bauder identified both documents and testified that by signing them in connection with a loan transaction, he certified the accuracy of the information which they contained.

■ Relevant evidence, as defined by Neb. Rev. Stat. § 27-401 (Reissue 1995), is that which tends to make the existence of any fact of consequence more or less probable than it would be

without the evidence. *Blue Valley Co-op v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999). Here, the Bauders' financial ability to satisfy a judgment on the promissory note was relevant to the issue of whether it would have been reasonable for Borley Storage to pursue such a claim in mitigation of its damages. Borley Storage contends that any probative value of the financial statements was outweighed by the danger of unfair prejudice in that there was no showing of the methodology used for valuing Dennis Bauder's assets and liabilities, and thus the exhibits should have been excluded under Neb. Rev. Stat. § 27-403 (Reissue 1995). We conclude that this argument goes to the weight of the evidence and that the district court did not abuse its discretion in declining to exclude the financial statements under § 27-403.

Finally, Borley Storage argues that the financial statements should have been excluded as hearsay, in that they constituted out-of-court statements by Dennis Bauder to prove his net worth. Prior to receipt of the financial statements, Dennis Bauder testified at length concerning his financial condition at various times, including those periods covered by the financial statements. Thus, even if the financial statements constituted inadmissible hearsay, their admission would be harmless error because their content was established by other relevant evidence properly admitted. See *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

### *(iii) Motion for Directed Verdict*

Borley Storage contends that the district court erred in overruling its motion for directed verdict on the issue of mitigation of damages made at the close of the evidence. In denying the motion, the district court determined that "the defense has presented sufficient evidence to have that issue go to the jury." For the reasons discussed above, we find no error in that determination.

### 2. EVIDENCE OF HABIT AND CUSTOM

Whitted testified that he did not have a specific recollection of informing either Harry Borley or Maxine Borley of the need to file a continuation statement within 5 years of filing the original

financing statement. Over an objection that he lacked personal knowledge, Whitted was permitted to testify as to his habit and custom in advising parties in seller-financed transactions. Borley Storage contends that the district court erred in receiving this testimony over its objection.

The issue presented by this assignment of error is governed by § 27-406, which provides:

> (1) Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

> (2) Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

Although this court has not interpreted or applied this rule, the Nebraska Court of Appeals did so in *Hoffart v. Hodge*, 9 Neb. App. 161, 609 N.W.2d 397 (2000). In that case, the Court of Appeals examined whether a medical doctor offered sufficient foundation to support his testimony in a malpractice action as to his regular practice and routine. At the outset, the court noted that its analysis was "limited to situations where a party attempts to prove habit by way of opinion rather than by specific instances of conduct," because there was no record made of the doctor's habit based on specific conduct in specific similar situations. *Id.* at 167, 609 N.W.2d at 403. The court further noted the "precise contours of how frequently and consistently a behavior must occur to rise to the level of habit cannot be easily defined or formulated," and thus concluded that admissibility depends on the trial judge's evaluation of the particular facts of the case. *Id.* Thus, the trial court's decision to admit habit evidence based on opinion will be reviewed for an abuse of discretion. *Id.*

In *Hoffart*, the doctor testified that he regularly saw 140 patients per week for 15 years. He stated that during the relevant time period, he had a policy of advising his patients of mammogram failure rates and he generally told them a mammogram would be " '10 to 15 percent not accurate.' " *Id.* at 169, 609

N.W.2d at 404. Although the doctor could not specifically remember advising the patient at issue of the mammogram failure rates, it was his opinion that he would have informed her because it was his regular practice to do so. The Court of Appeals concluded that although the foundation for this opinion "was not thoroughly or artfully presented," the trial court did not abuse its discretion in finding it to be admissible. *Id.* at 170, 609 N.W.2d at 405. The court noted that "[t]he lack of detail concerning regularity (which involves frequency and consistency), specificity, and involuntary response, which are the hallmarks of proof of habit by specific instances rather than by opinion, does not render the opinion evidence inadmissible." *Id.* Rather, the court found that the absence of detail went to the weight which the fact finder would place on such evidence.

In the instant case, Whitted testified that he drafted all of the documents for the sale of Borley Storage. He stated that he had a procedure or checklist he followed in seller-financed transactions like that in which he represented Borley Storage. He stated that the documents involved in such transactions are generally the same. In addition, Whitted testified:

> Generally in a seller-financed transaction I would go through the documents with the client. And in going through the documents with the client, I would tell them of the effect of the document. For example, I would tell them that the stock pledge entitled to [sic] them to basically enforce the stock pledge and irrevocable stock power and take back the stock. I would have told them what — that the security interest in the personal property entitled them to repossess the personal property or to sell the personal property for satisfaction of the debt. I would tell them that it was perfected by virtue of filing with the Secretary of State, and I would tell them that the financing statement was good for a period of time and subject to later continuation.

Whitted stated that with respect to the Borley Storage sale, he "would have advised" that the financing statement needed to be continued after 5 years because that was his "standard operating procedure."

We agree with the analytical principles applied by the Court of Appeals in *Hoffart v. Hodge*, 9 Neb. App. 161, 609 N.W.2d

397 (2000), and conclude that the district court did not abuse its discretion in permitting this testimony. As in *Hoffart*, this case focuses on a professional service rendered years prior to testimony in a malpractice action. In *Hoffart*, the court recognized the practical reality that "a doctor cannot be expected to specifically recall the advice or explanation he or she gives to each and every patient he or she sees or treats" and that thus, "evidence of habit may be the only vehicle available for a doctor to prove that he or she acted in a particular way on a particular occasion" and is therefore "highly relevant." 9 Neb. App. at 168, 609 N.W.2d at 404. The same reality exists with respect to advice which is routinely given by a lawyer to a client in particular circumstances. Whitted testified that he has practiced law in Nebraska since 1974, focusing his practice on real estate and corporate transactional law, including the sale of businesses of all sizes. Although Borley Storage argues that Whitted did not provide a specific number of transactions in which he had been professionally involved or the details of any specific transaction, we conclude that this goes to the weight to be given to his testimony and not to its admissibility.

## V. DENIAL OF POSTTRIAL MOTIONS

Borley Storage assigns error with respect to the district court's denial of its posttrial motions seeking, in the alternative, the setting aside of the verdict and entry of judgment notwithstanding the verdict or for a new trial. Its argument with respect to this assignment is based upon claimed error in the submission of the mitigation of damages defense and the admission of Whitted's testimony regarding habit and custom. For the reasons discussed above, we conclude that the district court did not err in denying the posttrial motions.

## VI. CONCLUSION

For the reasons discussed, we conclude that there was no reversible error, and the judgment of the district court entered upon the jury verdict in favor of Whitted should therefore be affirmed.

AFFIRMED.

CONNOLLY, J., not participating.