ZINTER, Justice
(on reassignment).
[¶ 1.] Steven J. Wipf sued Dr. Terry Altstiel and Regional Health Physicians Inc. (Appellants) for medical malpractice. Through discovery, Wipf sought access to operative notes and postoperative notes relating to follow-up care of some of Dr. *791 Altstiel’s patients who are not parties to this action. The circuit court ordered Appellants to partially redact and produce the redacted records, and they appealed. We reverse and remand for reconsideration.

Fads and Procedural History

[¶ 2.] On April 22, 2011, Dr. Altstiel performed a laparoscopic hernia repair on Wipf at the Spearfish Regional Surgery Center (SRSC). The purpose of the surgery was to repair a tear or opening in Wipfs abdominal wall. Dr. Altstiel completed the surgery around 10:00 a.m., and Wipf was discharged around 4:00 p.m. Wipf was advised to notify his doctor if he experienced any unusual pain or developed a fever.
[¶ 3.] The following day, Wipf contacted SRSC to report that he was experiencing pain in his upper back, he had a fever, and he had been unable to have a bowel movement since prior to surgery. SRSC advised Wipf to go to the emergency room, and Wipf went to the Sturgis Regional Hospital (SRH). The emergency-department doctor found that Wipf did not have a fever or bowel blockage. Although Wipfs primary complaint was pain, he had not been taking his prescribed pain medication. Wipf was advised to take the pain medication and return if he felt that his condition worsened.
[¶4.] Wipf returned to SRH’s emergency department three nights later. He reported that he felt nauseous and that he still had been unable to have a bowel movement. Wipf was admitted to the hospital for observation, and he underwent a CT scan of his abdomen the following morning. The scan revealed fluid and air in the abdomen near an opening in the mid-small bowel. SRH transferred Wipf to the Rapid City Regional Hospital, where he underwent surgery with Dr. Larry Wehrkamp. Dr. Wehrkamp discovered two perforations in the small bowel that measured approximately two centimeters in size.
[¶5.] Wipf later sued Appellants for malpractice. Wipf alleged that Dr. Altst-iel accidentally perforated Wipfs small bowel during the laparoscopic hernia repair. Wipf also alleged that Dr. Altstiel failed to inspect and find the perforations before completing the surgery. Dr. Altst-iel contended that he inspected Wipfs bowel prior to concluding the surgery and that no perforations were present. Wipf, however, pointed out that Dr. Altstiel did not note the claimed inspection in his operative note. Dr. Altstiel’s expert also testified that for him to opine that Dr. Altstiel violated the standard of care, Wipf would have to show an unacceptably high complication rate in similar procedures with- different patients, ■ Because Dr. Altstiel estimated that he had conducted approximately 955 laparoscopic hernia repairs over thirteen years, and because Dr. Altstiel’s expert testified in his deposition that it would be relevant to consider the past 200-300 procedures, Wipf requested production of Dr. Altstiel’s operative notes involving this procedure for the prior five years, including medical reports or notes that related to follow-up care. The circuit court found those records relevant, ordered the doctor and clinic to “redact from these records the personal identifiers for each patient,”' and ordered them to produce the remaining redacted information.[1] *792 We subsequently granted Dr. Altstiel’s petition for an intermediate appeal.
' [¶ 6.] For purposes of appeal, Dr. Altstiel concedes that the redacted information is relevant.[2] However, he claims that the physician-patient privilege in SDCL 19 — 19—503(b) protects such anonymous, nonidentifying information from discovery. This is a question of first impression in this jurisdiction. If the privilege applies, then according to Dr. Altstiel, liability for malpractice will depend solely on his testimony of his unverifíable estimate of his own complication rate. Further, the inference to be drawn, from Dr. Altstiel’s failure to note an inspection of the bowel in his operative note will depend solely on Dr. Altstiel’s explanation.

Decision

, [¶ 7.] The physician-patient privilege, codified in SDCL 19 — 19—503(b), protects a physician-patient’s “confidential communications made for the purpose of diagnosis or treatment.” But the language of the statute does not-address information in a doctor’s records that does not identify the patient and cannot be. traced back to. the patient. Additionally, unlike some jurisdictions that have passed medical information privacy acts or patient’s rights legislation that more broadly protect medical information, see 3 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 514.12[5][c] (Mark S. Brodin, ed., Matthew Bender 2d ed.1998), the South Dakota Legislature has not done so.
[¶ 8.] The text of SDCL 19-19-503 does not protect all of a physician’s “medical records.” Rather, it only protects physician-patient “confidential communications” contained in medical records. SDCL 19-19-503(b). Because the text of SDCL 19-19-503(b) fails to address either the disclosure of anonymous, nonidentify-ing information or whether nonidentifying information is a physician-patient “confidential communication,” it is informative to consider the cases from other jurisdictions that have similar rules protecting physician-patient “confidential communications.” With almost unanimity, the courts applying analogous rules protecting physician-patient “confidential communications” hold that when adequate safeguards ensure the anonymity of the patient, relevant, noni-dentifying information is not privileged;[3] *793 See Snibbe v. Superior Court, 224 Cal.App.4th 184, 168 Cal.Rptr.3d 548, 554, 556-57 (2014) (interpreting California’s privilege rule, Cal. Evid.Code § 994 (West 2016), which protected “confidential communication[s] between patient and physician”); Bennett v. Fieser, 152 F.R.D. 641, 642-44 (D.Kan.1994) (interpreting Kansas’s privilege rule, Kan. Stat. Ann. § 60-427 (West 2012), which protected “confidential eommunication[s] between patient and physician”); Osterman v. Ehrenworth, 106 N.J.Super. 515, 256 A.2d 123, 129 (1969) (interpreting New Jersey’s privilege rule, N.J. Stat. Ann. § 2A:84A-22.2 (West 1968), which protected “a confidential communication between patient and physician”); Staley v. N. Utah Healthcare Corp., 230 P.3d 1007, 1010-11 (Utah 2010) (interpreting Utah’s privilege rule, Utah R. Evid. 506 (West 1994), which protected “information that'is communicated in confidence to a physician or mental health therapist”).
• [¶ 9.] Additionally, even courts interpreting broader privilege rules protecting “any communication” or “any information” hold that relevant, adequately protected, nonidentifying information is not privileged. See Ziegler v. Superior Court, 134 Ariz. 390, 656 P.2d 1251, 1254-56 (Ariz.Ct.App.1982) (interpreting Arizona’s privilege rule, Ariz.Rev.Stat. Ann. § 12-2235 (West 1974), which protected “any communication made by [a] patient with reference to any physical or mental disease or disorder ... or as to any such knowledge obtained by personal examination of the patient”); Cmty. Hosp. Ass’n v. District Count, 194 Colo. 98, 570 P.2d 243, 244-45 (1977); (interpreting Colorado’s privilege rule, Colo. Rev.Stat. Ann. § 13-90-107(d) (West 1973), which protected “any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient”); Fischer v. Hartford Hosp., 31 Conn. L. Rptr. 291 (Conn.Super.Ct.2002) (interpreting Connecticut’s privilege rule, Conn. Gen.Stat. Ann. § 52-146o (West 1996), which protected “any communication made to” a patient or “any information obtained by” a patient); Tomczak v. Ingalls Mem’l Hosp., 359 Ill.App.3d 448, 295 Ill.Dec. 968, 834 N.E.2d 549, 552-555 (2005)' (interpreting Illinois’s privilege rule, 735 Ill. Comp. Stat. Ann. 5/8-802 (West 2002), which protected “any information [the physician] may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient”); Terre Haute Reg'l Hosp., Inc. v. Trueblood, 600 N.E.2d 1358, 1360-62 (Ind. 1992) (interpreting Indiana’s privilege rule, Ind.Code § 34-1-14-5 (1991) (transferred to Ind.Code § 34-46-3-1 (West 2016)), which protected “matters communicated to [physicians] by patients”); Baptist Mem’l Hosp. v. Johnson, 754 So.2d 1165, 1169-71 (Miss.2000) (interpreting Mississippi’s privilege rule, Miss.Code. Ann. § 13-1-21 (West 2016), which protected “All communications made to a physician”); State ex rel. Wilfong v. Schaeperkoetter, 933 S.W.2d 407, 409-10 (Mo.1996) (interpreting Missouri’s privilege rule, Mo. Ann. Stat. § 491.060(5) (1994), which protected “any information which [the physician] may have acquired from any patient while attending [the patient] in a professional character”).[4]
*794 [¶ 10.] This type of anonymous, nonidentifying information is not protected by the physician-patient privilege because there is no patient once the information is redacted. As the Utah Supreme Court thoughtfully explained:
[The physician-patient privilege] shields from disclosure certain information communicated between a physician or a mental health therapist and a patient, so long as the information “is communicated in confidence” and for the purpose of diagnosis and treatment of the patient. Under [the physician-patient privilege], communicating information contemplates an exchange of information between a physician and a patient. . In short, to be operative, [the privilege] requires two actors — a patient and a physician,, and an exchange of confidential information concerning a particular subject matter — diagnosis and treatment. All of these elements must be present for the privilege to be activated; mere descriptions of diagnoses and treatments that make no reference to a patient are ineligible for protection under [the privilege]. Indeed, the presence of identifying information and the orders of the court are what make the information privileged. Without an identified individual connected to a diagnosis, the diagnosis contains nothing more than medical terminology. The United States District Court for the Southern District of New York cogently explained this concept:
that any record containing a diagnosis, an evaluation or a treatment, even if it cannot be connected with a patient, is privileged — is not self evident. ... [0]ne might argue, as a matter of theory, that the use of the disjunctive in the [rule] means that any document containing a patient’s identity or diagnosis or evaluation or treatment is privileged.... Such a construction, however, would lead to preposterous results. A scrap of paper upon which a physician had jotted down a patient’s name, or wrote only the word “indigestion” (a diagnosis) or “aspirin” (a treatment) or “malingering” (an evaluation) would, or at least could, be privileged. The ... rule-makers could not possibly have so intended.
Staley, 230 P.3d at 1011 (quoting In re Rezulin Prods. Liab. Litig., 178 F.Supp.2d 412, 414 (S.D.N.Y.2001) (citations omitted)). In accordance with the rationale of the Utah Supreme Court and the almost unanimous view of other courts,[5] we too *795 hold that anonymous, nonidentifying medical information is not privileged per se.
[¶ 11.] To ensure that privileged information is not disclosed, the circuit court must ensure that the information to be disclosed is nonidentifying. No third-party patient can be associated with the information. Additional safeguards such as protective orders should also be considered. The cases considering patient, anonymity have required such things as: redaction of all personal information as well as any information that would tend to identify a patient; sealing documents; prohibiting the attorneys and parties from attempting to learn the identities of the patients or making contact with them; and prohibiting any person that viewed the information from disclosing any of the information. See Ziegler, 656 P.2d at 1254-55; Cmty. Hosp. Ass’n, 570 P.2d at 244; Fieser, 152 F.R.D. at 643-44. Courts have also required attorneys to sign protective orders, see Trueblood, 600 N.E.2d at 1360-62, and limited disclosure to expert witnesses, see Staley, 230 P.3d at 1009.
[¶ 12.] In this case, the circuit court required Dr. Altstiel to “redact the personal identifiers for each patient, in-eluding the patient’s name, address, phone number, date of birth, and social security number.” The court did not, however, require redaction of other information that could identify the patient, such as the patient’s medical history or information regarding family members. There is also no indication that the court considered whether identification of the patient could occur because of the size of the community. This could be significant because as Dr. Altstiel points out, Sturgis and Meade Counties have small populations, which could lead to identification of a patient; Cf. Staley, 230 P.3d at 1013 (noting little chance of identification because the hospital at issue was one of several located in an area populated by approximately 900,000 people and also drew patients from neighboring states). Finally, the court did hot issue a protective order. Accordingly, we reverse and remand for the circuit court to consider whether additional safeguards will ensure patient anonymity. If they will, the court must enter a protective order before disclosure. '
[¶ 13.] Reversed and remanded for further proceedings consistent with this opin *796 ion.[6]
. [¶ 14.] WILBUR and KERN, Justices, concur.
[¶ 15.] GILBERTSON, Chief Justice, and SEVERSON, Justice, dissent.

. The circuit court required redaction by Dr. Altstiel and the clinic before disclosing the information. The court's order provided:
Defendant shall provide to Plaintiff copies of all the medical records (beginning with the operative note and including all medical reports or notes generated for the next 30 days that in any way related to care for, or recovery from, the laparoscopic hernia repair surgery) for each patient on which Dr. *792 Terry L. Altstiel performed laparoscopic hernia repair surgery during the years 2009 through 2013;
IT IS FURTHER ORDERED that Defendants shall redact from those records the personal identifiers for each patient, including the patient’s name, address, phone number, date of birth, and social security number, prior to disclosing these records to Plaintiff....

. The records sought in this case would not be discoverable in many malpractice cases because they would not be relevant, However, in this case, Dr, Altstiel’s expert made the information relevant in his deposition testimony, and Dr. Altstiel does not contest the court's relevancy determination for purposes of this appeal.

. The Chief Justice’s dissent contends that the plain text of SDCL 19-19-503 is broad enough to cover all medical records, whether identifying or nonidentifying. CJ. Gilbert-son’s dissent ¶¶ 18, 20. Both dissenting opinions point out that we have applied the privilege in SDCL 19 — 19—503 to a doctor’s treatment records. See, e.g., Shamburger v. Behrens, 380 N.W.2d 659, 662 (S.D.1986) (holding that a hospital’s records of a patient’s treatment for alcoholism were "protected by the [physician-patient] privilege” (emphasis added) and were therefore not discoverable in an action attempting to prove that the patient had a problem with alcohol). However, the dissent’s cases such as Sham-burger do not state that a physician's records are "confidential communications” per se; and the text of the rule does not mention medical records — it only protects physician-patient confidential communications. SDCL 19-19-503, The dispositive question is whether anonymous, nonidentifying information — i.e., a record without a patient — of a *793 doctor's complication rate is a physician-patient confidential communication. Further, if such information is not privileged, it does not matter who may invoke the privilege because there is no patient to invoke it for, contra J. Severson's dissent ¶ 40, nor does it amount to creating a new exception to the privilege, contra' C J. Gilbertson’s dissent . ¶ 16; J. Severson's dissent .¶ 41.

. The only cases that have concluded noni-dentifying information may be privileged are inapposite. For example, Baker v. Oakwood *794 Hospital Corp. involved consideration of a broader statute prohibiting disclosure of “any information that the person has acquired in attending a patient.” 239 Mich.App. 461, 608 N.W.2d 823, 827-831 (2000) (quoting Mich. Comp. Laws Ann. § 600.2157 (West 2016) (emphasis added)). Two other courts relied on other legislative authority. See In re Columbia Valley Reg’l Med. Ctr., 41 S.W.3d 797, 799 (Tex.App.2001) (“[T]he Texas Health and Safety Code provides that all health care information found in hospital records is privileged and cannot be disclosed without authorization.”); Roe v. Planned Parenthood Sw. Ohio Region, 122 Ohio St.3d 399, 912 N.E.2d 61, 70 (2009) (citing Hageman v. Sw. Gen. Health Ctr., 119 Ohio St.3d 185, 893 N.E.2d 153, 156 (2008)) (determining that medical records were privileged based on HIPAA and the Ohio Public Records Act before going on to hold the redacted records were privileged). And one case involved a situation where it was doubtful whether the identities of third-party patients could be kept confidential. See Parkson v. Cent. DuPage Hasp., 105 Ill.App.3d 850, 61 Ill.Dec. 651, 435 N.E.2d 140, 143-44 (1982).

. The dissenting opinions contend that we should not follow the virtually unanimous rule because those cases eschew a ''plain-text” analysis of the language. See C.J. Gil-bertson’s dissent ¶ 21; J. Severson’s dissent ¶¶ 38-39. However, there is no dispute that SDCL 19-19-503 does not address anonymous, nonidentifying information that has no *795 connection to any particular patient. That alone should end any “plain text” argument. But additionally, although the precise issue in this case has been repeatedly litigated in other courts, courts do not agree with the dissents' view that the "plain meaning” of the words physician-patient “confidential communication” (or analogous words) in any physician-patient privilege rule • includes information that cannot be traced to a patient and thus contains nothing more than medical terminology (such as a doctor’s method of practice and complication rate). See cases cited supra ¶¶ 8-9 (finding no privilege); see also Baker, 608 N.W.2d at 830 (finding privilege applied because "any information” is broad enough to protect nonidentifying information) (emphasis added); Roe, 912 N.E.2d at 70-71 (no plain meaning analysis); Parkson, 61 Ill.Dec. 651, 435 N.E.2d at 144 (no plain meaning analysis). Moreover, the courts finding that the privilege does not apply have done so despite the fact that they employ the same rules of interpretation that we do; they first look to the plain meaning of the text. See Fanis v. Advantage Capital Corp., 217 Ariz. 1, 170 P.3d 250, 251 (2007); People v. Castillolopez, 63 Cal.4th 322, 202 Cal.Rptr.3d 703, 371 P.3d 216, 219-20 (2016); Mulberger v. People, 366 P.3d 143, 147 (Colo.2016) (en banc); Gould v. Freedom of Info. Comm'n, 314 Conn. 802, 104 A.3d 727, 732-33 (2014); In re Marriage of Turk, 382 Ill.Dec. 40, 12 N.E.3d 40, 44 (2014); State v. Ryce, 303 Kan. 899, 368 P.3d 342, 349 (2016); Brown v. State, 102 So.3d 1087, 1089 (Miss.2012); Ross v. Dir. of Revenue, 311 S.W.3d 732, 735 (Mo.2010) (en banc); State v. Grate, 220 N.J. 317, 106 A.3d 466, 473 (2015); State v. Steed, 325 P.3d 87, 93 (Utah 2014).

. In light of this disposition, we need not address the other arguments raised on appeal.