#29021-r-DG
**2020 S.D. 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ALYSSA FERGUSON,                                Plaintiff and Appellee,

v.

BRADLEY C. THAEMERT, M.D.,                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CAMELA THEELER
Judge

* * * *

DANIEL K. BRENDTRO
ROBERT D. TRZYNKA of
Hovland, Rasmus, Brendtro,
    & Trzynka, Prof. LLC
Sioux Falls, South Dakota                       Attorneys for plaintiff and
                                                appellee.


MARK W. HAIGH
TYLER W. HAIGH of
Evans, Haigh & Hinton, LLP
Sioux Falls, South Dakota                       Attorneys for defendant and
                                                appellant.

* * * *

ARGUED
APRIL 22, 2020
OPINION FILED **12/09/20**

GILBERTSON, Chief Justice

[¶1.]        Dr. Bradley Thaemert performed the incision for an anterior spinal

surgery on Alyssa Ferguson.  Ferguson sued Dr. Thaemert for lack of informed

consent after he performed a vertical incision rather than her requested horizontal

incision.  Ferguson brought a motion to compel the production of medical records of

Dr. Thaemert's non-party patients.  The circuit court granted the motion in part.

Dr. Thaemert brings this intermediate appeal arguing the circuit court abused its

discretion.  We reverse the circuit court's decision.

### Facts and Procedural History

[¶2.]        Alyssa Ferguson (Ferguson) underwent an anterior spinal surgery

with Dr. Walter Carlson (Dr. Carlson), a spine surgeon, and Dr. Bradley Thaemert

(Dr. Thaemert), a general surgeon, to relieve lower back pain.  The surgery was

elective, but is a major surgery, involving an incision through the abdominal

muscles into the peritoneal cavity to reach the spine through the front of the body.

Dr. Thaemert was tasked with making the incision allowing access to the spine, so

Dr. Carlson could perform the spinal surgery.

[¶3.]        When Ferguson met with Dr. Thaemert for a pre-operation evaluation,

they discussed her desire to have a horizontal incision below the bikini line, rather

than a vertical incision, "if at all possible."  Ferguson wanted the horizontal incision

for cosmetic reasons as well as for ease of having a caesarian section in the future.

Ferguson claims that at the meeting Dr. Thaemert promised to do the surgery with

a horizontal incision, and that she relied on that promise in undergoing the surgery.

Dr. Thaemert testified at his deposition that, while he cannot specifically recall the

conversation, he would never make a promise to perform any particular type of incision. He testified that he always advises his patients in the pre-operative discussion that he must use the safest incision during the surgery. That determination is made, according to Dr. Thaemert, by assessing the fat on the abdomen and where an incision would need to be placed under the fat.

[¶4.]     Ferguson signed an informed consent form before the surgery, which provided consent for any procedures necessitated by changed conditions during the surgery. Dr. Thaemert claims that in the operating room, after Ferguson was under anesthesia, he assessed her abdomen and determined a vertical incision would be the safest way to allow Dr. Carlson access to the spine, so he made the vertical incision. A radiology technician who is a friend of Ferguson testified that he was in the surgical suite while anesthesia was being administered to Ferguson and heard Dr. Thaemert, as he entered the operating room, ask if this was his horizontal incision case and if anyone had notes on that.

[¶5.]     When Ferguson learned after the surgery that Dr. Thaemert had made a vertical incision, she was upset and asked her nurses and Dr. Carlson if something had gone wrong in the surgery to necessitate the vertical incision. No one knew of any complication in the surgery. Ferguson was unable to contact Dr. Thaemert to ask about the incision. Finally, Dr. Thaemert called Ferguson at Dr. Carlson's behest. Ferguson claims Dr. Thaemert told her that nobody informed him that she was the horizontal incision case that day, and then told her the scar should not be too bad and that his daughter's appendix scar was not bad. He advised

Ferguson to keep the scar out of sunlight for a year and apply zinc oxide to it. Dr. Thaemert testified that he does not remember the specifics of the phone call.

[¶6.] While the surgery was successful, Ferguson maintains that she would not have gone through with the surgery on that day if she had known Dr. Thaemert would not perform a horizontal incision. Dr. Thaemert asserts that he always makes clear to his patients that he will use whichever incision will be safest, assessed at the time of surgery.

[¶7.] Ferguson sued Dr. Thaemert alleging that he performed the vertical incision without Ferguson's informed consent. Dr. Thaemert denied Ferguson's allegations. Ferguson's counsel requested discovery of "all medical records of any patients on whom [Dr. Thaemert] performed incisions, for anterior spinal fusions at or below the L4 level, during the past 5 years without identifying the patient consistent with . . . *Wipf v. Al*[*t*]*stiel*[.]" Dr. Thaemert objected to the request as being irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, vague, violating HIPAA, and otherwise seeking protected health information that could not be disclosed under South Dakota law. After some back and forth between the parties' counsel, Ferguson brought a motion to compel those non-party patients' medical records.

[¶8.] The motion to compel was considered at a hearing along with other motions not at issue here. Ferguson argued that the records are relevant because Dr. Thaemert's credibility is at issue, and a jury needs to be able to gauge the credibility of his testimony that his general practice is to discuss and document things the way he did with Ferguson. Ferguson argued that the records "would

allow us to figure out how he proceeds with horizontal incisions, how they're conducted, why they're performed, which patient receives them, their body types, the notes he makes about them, [and] how often he changes his mind while on the operating table." She asserted that the records would reveal Dr. Thaemert's typical procedure for obtaining informed consent and would allow a jury to check that credibility. Finally, Ferguson argued that *Wipf v. Altstiel*, 2016 S.D. 97, 888 N.W.2d 790, provides "the solution for how we deal with sensitive health information."

[¶9.] Dr. Thaemert argued that Ferguson's request to review non-party patient medical records was made simply to burden him into settling the case and was based on Ferguson's belief that if she is allowed to see the records, it is possible something helpful may be found. Dr. Thaemert also asserted that this case is solely about his treatment of Ferguson and whether he failed to obtain her informed consent. He argued that other patients' records are entirely irrelevant to the question of whether Ferguson gave informed consent. Finally, Dr. Thaemert asserted that there is "no relevant evidence that can be gotten from these records that would support the burden that plaintiff wants to place on us."

[¶10.] The circuit court granted the motion to compel in part and denied it in part. The court found the records were relevant because Dr. Thaemert has no specific recollection of his conversation with Ferguson and relies entirely on his general practice. However, the circuit court limited the scope of the discoverable records to pre-operation and operation notes, consult notes, age, gender, and body mass index (BMI) of patients who had anterior spinal fusion incisions at or below L4 level in the last three years, finding the five-year time frame to be unreasonably

cumulative. Dr. Thaemert filed a petition for allowance of appeal from an intermediate order, which we granted. He raises one issue restated as follows: whether the circuit court abused its discretion in determining that confidential, non-party patient records are relevant to this case and discoverable when patient identifiers are redacted from the documents.

## Standard of Review

[¶11.] A circuit court's discovery orders are reviewed for an abuse of discretion. *Andrews v. Ridco, Inc.*, 2015 S.D. 24, ¶ 14, 863 N.W.2d 540, 546. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which on full consideration, is arbitrary or unreasonable.'" *Id.* (quoting *In re Jarman*, 2015 S.D. 8, ¶ 19, 860 N.W.2d 1, 9). When determining whether a discovery order violated a statute, "it raises a question of statutory interpretation requiring de novo review." *Id.* (quoting *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 2009 S.D. 69, ¶ 47, 771 N.W.2d 623, 636).

## Analysis and Decision

*Relevance*

[¶12.] Pretrial discovery has a broad scope. *Kaarup v. St. Paul Fire & Marine Ins. Co.*, 436 N.W.2d 17, 19 (S.D. 1989). The broad scope ensures the purposes of discovery—"(1) narrow[ing] the issues; (2) obtain[ing] evidence for use at trial; (3) secur[ing] information that may lead to admissible evidence"—are satisfied. *Id.* "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" SDCL 15-6-26(b). "Evidence is relevant if: (a) [i]t has any tendency to make a fact more or

less probable than it would be without the evidence; and (b) [t]he fact is of consequence in determining the action." SDCL 19-19-401. But the definition of relevance at the discovery stage is broad so that it allows for discovery of "information that may lead to admissible evidence at trial." *Kaarup*, 436 N.W.2d at 20. "It is not ground[s] for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." SDCL 15-6-26(b).

[¶13.] Dr. Thaemert argues that the requested records are irrelevant to the central issue of the case: whether Ferguson gave informed consent. He claims that there is no basis of comparison between Ferguson and other patients because every body type is different, and the decision to perform a particular type of incision depends on each patient's particular circumstance. He therefore asserts that there has been no showing that the records are relevant to whether Ferguson gave informed consent here and further contends that any need to impeach his credibility at trial is not a sufficient reason to compel the pretrial production of confidential records.

[¶14.] Ferguson responds that Dr. Thaemert made the records relevant by asserting what he generally does (his pattern, habit, and general practice in informed consent conversations with patients) as his main defense. Ferguson asserts that because the scope of discovery is broad, the records are discoverable because they may show Dr. Thaemert's habit in how he responds to a patient's incision preference and documents the process. According to Ferguson, documentary evidence is proper evidence for showing whether a pattern claim is

even a viable defense for Dr. Thaemert, and these non-party records are the only evidence available. However, Dr. Thaemert explained that it is not his general practice to write down detailed summaries of his pre-operation conversations with patients, so a detailed recitation of the conversations would not be in the records if produced. The records would merely look like Ferguson's record and be just as unhelpful.[1]

[¶15.] Dr. Thaemert relies on *Milstead v. Smith* (*Milstead I*), 2016 S.D. 55, 883 N.W.2d 711, and the *Nixon* test for production of documents adopted therein. Both *Milstead I* and *Milstead v. Johnson* (*Milstead II*), 2016 S.D. 56, 883 N.W.2d 725, decided the same day, involved criminal defendants attempting to subpoena police officer disciplinary records and complaints from the arresting officers' personnel files. The Minnehaha County Sheriff filed motions to quash those subpoenas arguing the records were confidential and the subpoenas were unreasonable. *Milstead I*, 2016 S.D. 55, ¶ 3, 883 N.W.2d at 715; *Milstead II*, 2016 S.D. 56, ¶ 3, 883 N.W.2d at 728. The circuit court ordered portions of the

---

1. Ferguson's pre-operation record contains only the following relevant notes:

    <u>Assessment/Plan</u>
    1. Chronic back pain.
    2. The plan is for anterior exposure. If at all possible she would prefer to have a Pfannenstiel [horizontal] incision.
    3. I told her it is a little longer incision and she may have a little bit of numbness. The main issue would be that it is cosmetically below the bikini line which she wishes for.
    4. The risk of seromas, bleeding, DVTs, bowel injury, nerve injury discussed and she would like to proceed.

    The only reference to the incision location in the operation notes for Ferguson was "[t]he abdomen was prepped and draped in normal sterile fashion. A low midline incision was made."

disciplinary records produced for in-camera review. *Milstead I*, 2016 S.D. 55, ¶ 4, 883 N.W.2d at 715; *Milstead II*, 2016 S.D. 56, ¶ 4, 883 N.W.2d at 729.

[¶16.]      In the *Milstead* cases, this Court adopted the test for allowing production of documents laid out by the United States Supreme Court in *United States v. Nixon*, 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). This Court acknowledged that

> [c]ourts . . . routinely order production of confidential and even statutorily privileged documents for in camera review in civil and criminal proceedings. And courts are authorized to impose necessary, effective, and strict restrictions on the use of the records.

*Milstead I*, 2016 S.D. 55, ¶ 33, 883 N.W.2d at 724. It ultimately determined that before such production can be allowed the *Nixon* test must be satisfied. That test "obligates the requesting party to establish that the desired evidence is (1) relevant, (2) admissible, and (3) requested with adequate specificity." *Id.* ¶ 20, 883 N.W.2d at 720. For the relevance element, the Court required that the defendant "establish a factual predicate showing that it is reasonably likely that the requested file will bear information both relevant and material to her defense." *Id.* ¶ 25, 883 N.W.2d at 722. *See also Milstead II*, 2016 S.D. 56, ¶ 25, 883 N.W.2d at 735. All three elements of the *Nixon* test were unsatisfied in both *Milstead* cases, and the Court held that the circuit court erred in ordering in-camera review of the personnel files. *Milstead I*, 2016 S.D. 55, ¶ 33, 883 N.W.2d at 723; *Milstead II*, 2016 S.D. 56, ¶ 33, 883 N.W.2d at 737.

[¶17.]      Ferguson argues that the *Milstead* cases and the *Nixon* test are not applicable here because the *Milstead* cases dealt only with subpoenas in criminal

cases.  She also argues that the cases allow for confidential records to be produced when the circuit court can properly protect the information.  Dr. Thaemert responds that nothing in either *Milstead* case limited its holding to criminal subpoenas.

[¶18.]	Although Ferguson's request for civil discovery does not implicate the same criminal procedural statutes at issue in the *Milstead* cases, the relevance standard from these cases is nevertheless instructive here given that Ferguson is requesting medical records which may contain statutorily privileged information.  Accounting for the broader definition of relevance in the scope of discovery, Ferguson must show with adequate specificity that the records are reasonably likely to contain relevant evidence or lead to the discovery of relevant and admissible evidence.

[¶19.]	Ferguson asserts that she wants the records to search for evidence of Dr. Thaemert's general practice in talking to patients and performing this type of surgery to assess the credibility of his testimony.  However, "the need for evidence to impeach witnesses is [generally] insufficient to require its production in advance of trial." *Milstead I*, 2016 S.D. 55, ¶ 26, 883 N.W.2d at 722 (quoting *Nixon*, 418 U.S. at 701, 94 S. Ct. at 3104) (alteration in original).  Other than attacking Dr. Thaemert's credibility, Ferguson has not identified a specific use for the records other than a cursory explanation that there could be something helpful in the records.  Allowing a fishing expedition through confidential non-party patient records cannot be permitted where there has not been a sufficient showing that they are reasonably likely to contain or lead to evidence relevant to the issues of the case.

[¶20.]     Dr. Thaemert argues that Federal Rule of Evidence 406 does not require corroborating evidence for him to testify about routine practice, whereas Ferguson argues that specific evidence of a sufficient number of instances is required to demonstrate a routine. *See Smith v. United States*, 583 A.2d 975, 980 (D.C. 1990). However, testimony of general practice is admissible to show conformity with that routine under Federal Rule of Evidence 406, which is identical to SDCL 19-19-406,[2] "regardless of whether it is corroborated or whether there was an eyewitness." Dr. Thaemert's testimony concerning his habit in obtaining informed consent may well be weak evidence, but a jury will be able to weigh it against Ferguson's conflicting testimony and determine whether Dr. Thaemert obtained Ferguson's informed consent. *See Hoffart v. Hodge*, 609 N.W.2d 397, 405 (Neb. Ct. App. 2000).

[¶21.]     Further, Ferguson acknowledges that she is not seeking to prove Dr. Thaemert's claimed habit, but rather to disprove it. Ferguson hopes to find something in the cache of other patients' records that "*could* be used to gauge [Dr. Thaemert's] credibility" or cast some doubt on the claim that Dr. Thaemert would never promise a patient that he would perform a particular incision in this type of surgery. Emphasis added. However, Ferguson's theory of liability is very specific to

---

2.     Federal Rule of Evidence 406 and SDCL 19-19-406 both state:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

her *individual* care. While Ferguson maintains that Dr. Thaemert breached a duty of care by failing to make the incision she requested and consented to, she does not claim that Dr. Thaemert violated the standard of care for this type of procedure by performing a vertical incision rather than a horizontal incision. Ferguson has not identified how information relating to other patients undergoing the same surgical procedure, if found, would support a determination of whether *she* gave informed consent.

[¶22.] Discovery of the records requested here does not appear reasonably calculated to lead to the discovery of relevant and admissible evidence. A request to forage through other patients' medical records in the hope of finding some possible basis for impeachment is not a proper basis to allow discovery of the medical records in this case. Without a showing of relevance, the non-party patient records are not discoverable under SDCL 15-6-26(b). The circuit court violated that statute in granting Ferguson's motion to compel and thus abused its discretion by making "a choice outside the range of permissible choices." *See Andrews*, 2015 S.D. 24, ¶ 14, 863 N.W.2d at 546.

[¶23.] While we have already determined the records are not subject to production in this case, the circuit court's order also exceeds the boundaries described in *Wipf*, 2016 S.D. 97, 888 N.W.2d 790. Therefore, we address the parties' further arguments regarding the applicability of *Wipf*. In particular, its holding that any medical records produced may not include personal identifying information, the disclosure of which would violate the statutory privilege protecting confidential communications between a doctor and patient.

*Patient Confidentiality*

[¶24.] Dr. Thaemert argues that the circuit court erred by failing to balance the burden on the non-party patients' confidentiality against any limited relevance of the requested records. He asserts that redacting identifying information cannot fully protect other patients' confidentiality. He relies on the dissent in *Wipf* to support the argument that allowing discovery of these records would create a "slippery slope" leading to the proffer of evidence on irrelevant issues and a resulting "breach of non-party patients' confidentiality." *See* 2016 S.D. 97, ¶ 22, 888 N.W.2d at 799 (Gilbertson, C.J., dissenting). The risks of confusion, delay, and misleading the jury, he claims, outweigh any probative value.

[¶25.] Ferguson responds that *Wipf* determined that redacted patient records do not infringe on patient privacy. She asserts that only confidential communications within those records are protected by SDCL 19-19-503's physician-patient privilege, and when reasonable safeguards ensure anonymity the rest of the record is not privileged. Ferguson relies on the statement in *Wipf* that "there is *no patient* once [identifying] information is redacted." 2016 S.D. 97, ¶ 10, 888 N.W.2d at 794. She finally argues that Thaemert's slippery slope argument is false and that he cited no authority to support that allegation.

[¶26.] The physician-patient privilege protects "confidential communications" between a patient and doctor "made for the purpose of diagnosis or treatment[.]" SDCL 19-19-503(b). "The public has an interest in protecting [privileged] information as it encourages patients to be open and candid with their counselors[, doctors, etc.]." *State v. Karlen*, 1999 S.D. 12, ¶ 39, 589 N.W.2d 594, 602. Public

policy encourages "uninhibited communication between a physician and his patient . . . to insure the free flow of health care, absent any fears on the patient's part that anything he says might later be used against him." *People ex rel. D.K.*, 245 N.W.2d 644, 648 (S.D. 1976). The disadvantage of limiting available evidence through privileges is balanced against the public policy favoring the privilege. *Maynard v. Heeren*, 1997 S.D. 60, ¶ 8, 563 N.W.2d 830, 833, *abrogated on other grounds*, *Milstead II*, 2016 S.D. 56, ¶¶ 34-35, 883 N.W.2d at 737-38.

[¶27.] In *Wipf*, a patient sued a surgeon for medical malpractice after two perforations were found in his small bowel after a laparoscopic hernia repair. 2016 S.D. 97, ¶¶ 4-5, 888 N.W.2d at 791. The surgeon had not noted his claimed inspection for perforations during the surgery in his operative notes, and his expert testified that to show a violation of the standard of care the patient "would have to show an unacceptably high complication rate in similar procedures with different patients." *Id.* ¶ 5, 888 N.W.2d at 791. The expert testified that the surgeon's records from the past 200-300 laparoscopic hernia repairs would be relevant to that question. *Id.* The circuit court ordered the surgeon and clinic to produce those records with personal identifiers for each patient redacted. *Id.* Crucially, the surgeon conceded the records' relevance on intermediate appeal but argued the records were not discoverable under SDCL 19-19-503(b). *Id.* ¶ 6, 888 N.W.2d at 792.

[¶28.] A majority of this Court agreed with the circuit court's discovery order in a 3-2 decision and remanded the case for further consideration of whether adequate safeguards were in place for ensuring patient anonymity. *Id.* ¶ 12, 888

N.W.2d at 795. Those safeguards would include removing, in addition to "name, address, phone number, date of birth, and social security number[,]" any other information such as medical history or family members that could also lead to identifying the patient. *Id.* The circuit court was also instructed to consider the population size of the area served by the hospital and to issue a protective order for the records. *Id.*

[¶29.] The majority held that "anonymous, nonidentifying medical information is not privileged *per se*." *Id.* ¶ 10, 888 N.W.2d at 795. It stated that "confidential communications," as used in the physician-patient privilege context, does not include the entire medical record, but only the parts that are confidential communications. *Id.* ¶ 8, 888 N.W.2d at 792. The majority found persuasive other state courts' decisions holding "when adequate safeguards ensure the anonymity of the patient, relevant, nonidentifying information is not privileged." *Id.* Its determination, that a lack of identifying information means there is no longer a patient, was based on the Utah Supreme Court's explanation that

> mere descriptions of diagnoses and treatments that make no reference to a patient are ineligible for protection. . . . [T]he presence of identifying information and the orders of the court are what make the information privileged. Without an identified individual connected to a diagnosis, the diagnosis contains nothing more than medical terminology.

*Id.* ¶ 10, 888 N.W.2d at 794 (quoting *Staley v. N. Utah Healthcare Corp.*, 230 P.3d 1007, 1011 (Utah 2010)).

[¶30.] Ferguson argues that *Wipf* mirrors this case factually and procedurally because Dr. Thaemert put his prior procedures at issue by asserting that he followed his general practice with Ferguson. However, a doctor's inability to recall

a conversation with a patient about a specific aspect of the patient's care does not suddenly make other patients' medical records relevant and open for discovery on a claim involving a particular plaintiff's informed consent. This is particularly true where Dr. Thaemert has not referred to other medical records in support of his defense and Ferguson has failed to adequately articulate the specific relevant information the non-party patient records may contain. *Wipf* does not control the issue here because its holding is limited by the fact that relevance was not at issue. In fact, the Court, in *Wipf*, specifically noted that former patients' records "would not be discoverable in many malpractice cases because they would not be relevant." *Id.* ¶ 6 n.2, 888 N.W.2d at 792 n.2.

[¶31.] Moreover, even though relevance was conceded in *Wipf*, the Court remanded the circuit court's order to "require redaction of other information that could identify the patient" and to consider "whether identification of the patient could occur because of the size of the community." *Id.* ¶ 12, 888 N.W.2d at 795. In comparison, the circuit court here allowed discovery of "pre-operative notes, operative notes, consult notes, age, gender, and body mass index (BMI) of any patient on whom [Dr. Thaemert] has performed incisions, for anterior spinal fusions at or below L4 level, during the past 3 years." But a patient's age, gender, and BMI fall within the realm of personal identifying information deemed to be part of the confidential communications protected by SDCL 19-19-503. In addition, a patient's pre-operative notes often include a wealth of personal information, including the patient's medical history, the very type of record the Court noted in *Wipf* that would require redaction because it could identify the patient. *See id.*

[¶32.] It is hard to conceive of how information from another patient's record could be used at trial without one party or the other seeking to use personal identifying information (e.g., medical history, body composition, communicated preferences) to explain or defend the type of incision made on a patient. This type of information goes well beyond "mere descriptions of diagnoses and treatments that make no reference to a patient." *Id.* ¶ 10, 888 N.W.2d at 794. Instead, one would need to delve into the specifics of each patient's record to make legitimate comparisons, much of which would be encompassed in the "exchange of confidential information" between doctor and patient that is privileged under SDCL 19-19-503. *See id.* The circuit court made no effort to determine whether the hundreds of pre-operative, operative, and consult notes it ordered Dr. Thaemert to produce contained personal identifying information. It was improper for the circuit court to order the en masse production of records containing personal identifying information without determining whether the information sought was privileged.

[¶33.] In cases where a circuit court determines that an adequate showing of relevance has been made for the production of medical records which may contain confidential communications, the proper method of receiving those records is by in-camera review. *See Maynard*, 1997 S.D. 60, ¶ 30, 563 N.W.2d at 841 (Konenkamp, J., concurring in part and dissenting in part). In such cases, the circuit court must conduct an in-camera review to determine whether privileged documents have been properly redacted. *Andrews*, 2015 S.D. 24, ¶ 32, 863 N.W.2d at 552. In this process, the court can also determine, after looking at the records thoroughly, if they are truly relevant, preventing overbroad production of communications or records. *See*

#29021

*Maynard*, 1997 S.D. 60, ¶ 18, 563 N.W.2d at 837. Only after such an in-camera review should the records be released to the parties.

[¶34.] Dr. Thaemert raised an additional issue concerning the undue burden on his clinic if he were required to produce the records, but we need not address that issue to reach the outcome of this case.

## Conclusion

[¶35.] The central issue in this case, whether Ferguson gave informed consent, comes down to what was discussed pre-operation between Ferguson and Dr. Thaemert. Ferguson has not shown that the requested records are relevant to that issue or reasonably likely to lead to the discovery of relevant and admissible evidence. Authorizing Ferguson to access private patient files creates too great a risk that privileged information will be released when the only justification for that release is that it might provide something helpful.

[¶36.] Because the records Ferguson requests are irrelevant and therefore not discoverable, *Wipf* is distinguishable from this case and does not control the outcome. The circuit court's order compelling production of the redacted non-party patient records is reversed.

[¶37.] JENSEN and DEVANEY, Justices, and SEVERSON, Retired Justice, concur.

[¶38.] KERN, Justice, dissents.

[¶39.] SEVERSON, Retired Justice, sitting for SALTER, Justice, disqualified.

-17-

KERN, Justice (dissenting)

[¶40.] The majority opinion reverses the circuit court's order compelling production of certain redacted patient records. In announcing this decision, it misapplies the discovery and relevancy standards and inappropriately employs the *Nixon* and *Milstead* tests. Therefore, I respectfully dissent.

[¶41.] At issue is whether Ferguson is entitled to discovery of third-party medical records. Ferguson moved to compel discovery regarding "all medical records of any patients on whom [Dr. Thaemert] performed incisions[] for anterior spinal fusions at or below the L4 level, during the past 5 years *without identifying the patient consistent with Wipf v. Al[t]stiel*[.]" 2016 S.D. 97, 888 N.W.2d 790 (emphasis added). Dr. Thaemert had indicated that he had performed approximately 300 surgeries within the preceding five years. The circuit court granted the motion in part, limiting production of the *redacted documents*, to "pre-operative notes, operative notes, consult notes, age, gender, and body mass index (BMI) of any patient on whom [Dr. Thaemert] has performed incisions for anterior spinal fusions at or below the L4 level, during the past 3 years." In addition, the court ordered that the documents be released under the provisions of a mutually agreed upon protective order, or if the parties were unable to agree, by an order issued from the court.

[¶42.] The majority opinion reverses the circuit court, reasoning that Ferguson is not entitled to *discovery* of the evidence because Ferguson has failed to establish that the records are sufficiently relevant. To support this position, it cites *Milstead v. Smith* and its companion case, *Milstead v. Johnson*, as well as *United*

*States v. Nixon. See Milstead v. Smith (Milstead I)*, 2016 S.D. 55, 883 N.W.2d 711; *Milstead v. Johnson (Milstead II)*, 2016 S.D. 56, 883 N.W.2d 725; *United States v. Nixon*, 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974).

[¶43.]     But the *Milstead* duology and the *Nixon* decision do not apply here. The *Milstead* cases involved the production of statutorily privileged documents requested for impeachment purposes in a *criminal* proceeding.  In both decisions, the defendant sought—and the circuit court partially upheld—a subpoena duces tecum requiring production of certain law enforcement personnel records for use at trial.  On appeal, this Court reviewed whether the circuit court erred when it held that the personnel file was discoverable under the applicable rules of criminal procedure.

[¶44.]     Although the *Milstead* decisions allow defendants to subpoena personnel records under certain circumstances (and when a constitutional right is implicated), this Court ultimately held that the requesting party did not meet his burden and reversed with orders to quash the subpoena.  In ordering reversal, this Court specifically observed that a defendant's use of a subpoena duces tecum in criminal cases for production of documents from the Government was not intended "as a generalized tool for discovery[.]"  *Milstead II*, 2016 S.D. 56, ¶ 17, 883 N.W.2d at 733.  *See also* SDCL 23A-14-5 (authorizing a subpoena duces tecum in criminal proceedings).

[¶45.]     This case, in contrast, involves discovery of confidential communications in a *civil* action, a practice that is governed by the general rules of discovery rather than the rules of criminal procedure.  Instead of attempting to use

a subpoena duces tecum (as in the *Milstead* cases), Ferguson properly filed a motion to compel discovery to ascertain the existence of the relevant information. Because *Milstead* is entirely inapplicable here, the Court should apply our well-established rules regarding discovery to determine whether Ferguson's request is "relevant to the subject matter involved in the pending action," and whether "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *See* SDCL 15-6-26(b). These standards are easily met.

[¶46.]     "Evidence is relevant if: (a) [i]t has any tendency to make a fact more or less probable than it would be without the evidence; and (b) [t]he fact is of consequence in determining the action." SDCL 19-19-401. This benchmark is low, especially at the discovery stage. *See Kaarup v. St. Paul Fire & Marine Ins. Co.*, 436 N.W.2d 17, 19 (S.D. 1989) (noting the broad scope of pretrial discovery). Even inadmissible evidence is discoverable "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." SDCL 15-6-26(b).

[¶47.]     In rejecting Ferguson's relevancy argument, the majority opinion holds that the documents requested in this case are entirely irrelevant and declares that permitting discovery "does not appear reasonably calculated to lead to the discovery of relevant and admissible evidence." Majority Opinion ¶ 22. But this conclusory statement assumes that the requested evidence is, in fact, irrelevant, a conclusion that directly contradicts the circuit court's evidentiary holding that "the information sought [was] relevant because [Dr. Thaemert had] no specific recollection of his discussions or assessments of [Ferguson] and relies entirely on what [Dr. Thaemert] considers to be his general practice."

[¶48.]    Appearances and reasonable calculations play no role in the initial relevancy analysis. The question before us is not whether the desired evidence is admissible at trial. *See* Majority Opinion ¶ 22. Rather, the question we must first ask is whether the evidence has "*any* tendency to make a fact more or less probable[.]" SDCL 19-19-401 (emphasis added). "Rule 401 provides a *lenient* standard for relevance under which evidence need not conclusively prove the ultimate fact in issue[.]" *Knecht v. Evridge*, 2020 S.D. 9, ¶ 21, 940 N.W.2d 318, 326 (emphasis added).

[¶49.]    Dr. Thaemert made his record-keeping practices relevant when he relied on them as a central tenant in his defense. He maintains that he makes the same general representations to each patient when obtaining informed consent prior to performing anterior spinal fusions. Although he admits that he cannot remember his exact conversation with Ferguson, he asserts that his representations to this Court regarding his ordinary practices are sufficient to establish that he did not violate the standard of care.

[¶50.]    These representations, taken alone, do not control our analysis with respect to relevancy. Without an opportunity to review documents that likely shed light on Dr. Thaemert's patient consultation practices, Ferguson has no meaningful way to refute Dr. Thaemert's defense. And while the medical records of other patients "would not be discoverable in many medical malpractice cases because they would not be relevant[,]" this may not be the case here. *Wipf*, 2016 S.D. 97, ¶ 6 n.2, 888 N.W.2d at 792 n.2. *See also* Majority Opinion ¶ 29. Testimony from a party's expert, as was the case in *Wipf*, or the particulars of a party's theory or defense, as

is the case here, might render otherwise irrelevant evidence relevant to a particular dispute.

[¶51.] Categorically prohibiting discovery of the redacted documents strips the opposing party of its opportunity to make an independent determination regarding the true nature of the records, leaving it and subsequently the court to adopt the position of one party or the other as a gauge for the relevancy inquiry. The majority opinion's decision restricts the circuit court's ability to preside over the discovery process by foreclosing Ferguson's ability to challenge the veracity of Dr. Thaemert's statements regarding his general practices, a position that is contrary to the purpose of discovery itself.

[¶52.] The majority opinion also incorrectly assumes that the information Ferguson seeks would be introduced exclusively for impeachment purposes when it states that "[a] request to forage through other patients' medical records in the hope of finding some possible basis for impeachment is not a proper basis to allow discovery of the medical records in this case." Majority Opinion ¶ 22. But this is not the case. The evidence is relevant not just for impeachment, but as evidence of Dr. Thaemert's purported habit of discussing the procedure during patient consultations. *See Arthur v. Zearley*, 992 S.W.2d 67, 75 (Ark. 1999) (holding that the issue of informed consent was a "central issue in th[e] case" and therefore relevant not only for impeachment, but also as part of the plaintiff doctor's case-in-chief). The majority opinion also claims that "Dr. Thaemert's testimony concerning his habit in obtaining informed consent may well be weak evidence, but a jury will be able to weigh it against Ferguson's conflicting testimony and determine whether

Dr. Thaemert obtained Ferguson's informed consent." Majority Opinion ¶ 20. But without discovery of his consultation practices this evidence is not subject to cross-examination. It is not the job of this Court at this initial phase of the proceedings to limit the scope of the potential evidence to the testimony of the parties.

[¶53.] A reviewing appellate court should not overturn a circuit court's relevancy determination without evidence of an abuse of discretion. This standard requires "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which on full consideration, is arbitrary or unreasonable." *Andrews v. Ridco, Inc.*, 2015 S.D. 24, ¶ 14, 863 N.W.2d 540, 546.

[¶54.] Implying that the requested documents were categorically irrelevant and exceeded the scope of discovery under SDCL 15-6-26(b), *see* Majority Opinion ¶ 22, the majority opinion does not articulate *how* the circuit court abused its discretion or *how* its ruling constituted "a choice outside the range of permissible choices" or is "arbitrary or unreasonable." *Andrews*, 2015 S.D. 24, ¶ 14, 863 N.W.2d at 546. It appears, based on this statement, that the only potential abuse lies in the document's perceived irrelevancy. At this stage of the proceedings, the threshold test for relevancy was met due to the nature of Dr. Thaemert's defense.

[¶55.] Because the information is, in fact, relevant, the next step is to determine whether the information sought falls outside the physician–patient privilege. The primary authority regarding discovery of third-party medical information in our jurisdiction is *Wipf v. Altstiel*, 2016 S.D. 97, 888 N.W.2d 790. Our holding in *Wipf*, which is consistent with the privilege rules in an overwhelming majority of jurisdictions, allows for admission of non-identifying

third-party medical information subject to certain conditions. *Id.* ¶ 8, 888 N.W.2d at 792-93 (listing jurisdictions that have held that non-identifying "confidential communications" are not privileged).

[¶56.]    In *Wipf*, a doctor performed a laparoscopic hernia repair on the plaintiff that resulted in a medical malpractice action. *Id.* ¶¶ 2, 5, 888 N.W.2d at 791. During the discovery stage of the litigation, the plaintiff requested production of Dr. Altstiel's notes involving the same procedure for the previous five years. *Id.* ¶ 5, 888 N.W.2d at 791. A dispute arose regarding whether the plaintiff was entitled to the medical records subject to redactions protecting the identities of the third parties. *Id.* The circuit court ordered production of the documents with certain identifying information redacted. *Id.*

[¶57.]    On intermediate appeal, we upheld the circuit court's determination that the documents were subject to discovery if "adequate safeguards" are present to "ensure patient anonymity." *Id.* ¶¶ 8, 12, 888 N.W.2d at 792–93, 795. Our reasoning for allowing discovery centered on the language of SDCL 19-19-503, which protects only "confidential communications contained *in* medical records" and not the medical records themselves. *Id.* ¶ 8, 888 N.W.2d at 792-93 (emphasis added). We, however, reversed with instructions that the circuit court take additional measures to protect the identities of the patients. *Id.* ¶¶ 12, 13, 888 N.W.2d at 795.

[¶58.]    *Wipf* requires that all information that could reveal the patients' identities be redacted and that additional safeguards might be appropriate, including "sealing documents; prohibiting the attorneys and parties from

attempting to learn the identities of the patients or making contact with them; and prohibiting any person that viewed the information from disclosing any of the information." *Id.* ¶ 11, 888 N.W.2d at 795. The size of the community is also relevant when determining whether the circuit court is capable of adequately shielding the third party's identity. *Id.* ¶ 12, 888 N.W.2d at 795.

[¶59.] The majority opinion attempts to bypass *Wipf* by limiting it to cases in which relevancy is not at issue. But the holding in *Wipf* does not call for such a limited application. It is the circuit court's role to make the initial determination of discoverability, scope, and relevancy to "ensure that the information to be disclosed is nonidentifying." *Id.* ¶ 11, 888 N.W.2d at 795. Upon a careful review of the specific nature of the documents involved in the case, the circuit court is fully capable of determining the measures necessary to protect the identities of the patients. The size of the community should play a role in the analysis. *Id.* ¶ 12, 888 N.W.2d at 795. Notably, because Ferguson's treatment took place in a hospital in Sioux Falls, the largest city in the state, community size is less of an issue than it was in *Wipf*, which involved an area with a smaller population.

[¶60.] Instead of letting the circuit court perform its function, the majority opinion classifies certain items in the records as identifying information without adequate authority to support these declarations. For instance, the majority opinion observes that "[i]t is hard to conceive of how information from another patient's record could be used at trial without one party or the other seeking to use personal identifying information (e.g., medical history, body composition, communicated preferences) to explain or defend the type of incision made on a

patient." Majority Opinion ¶ 32. It states that "a patient's age, gender, and BMI fall within the realm of personal identifying information deemed to be part of the confidential communications protected by SDCL 19-19-503." Majority Opinion ¶ 31. What the majority opinion fails to explain is how this information (e.g. age, gender, stated preference, or BMI), redacted to remove all information tying it to an individual patient, somehow becomes identifying.

[¶61.]      To support its broad statement, the majority opinion restates the rule from *Wipf* that requires redaction of information from a "patient's medical history" that "*could* identify the patient." 2016 S.D. 97, ¶ 12, 888 N.W.2d at 795 (emphasis added). *Wipf* did not provide a definitive list of medical information that must be redacted in order to protect a patient's confidential communications—nor could it. All that our holding in *Wipf* requires is that "[n]o third-party patient can be associated with the information." *Id.* ¶ 11, 888 N.W.2d at 795. And once properly redacted, "this type of anonymous, non-identifying information is not protected by the physician-patient privilege because there is no patient once the information" is removed. *Id.* ¶ 10, 888 N.W.2d at 794 (emphasis omitted).

[¶62.]      Whether the information is ultimately admissible is, of course, a separate consideration. The authority the majority opinion relies upon is distinguishable from this case. *Hoffart v. Hodge*, for instance, addresses the admissibility of evidence rather than its discoverability. 609 N.W.2d 397, 405 (Neb. Ct. App. 2000). And rather than supporting the majority opinion's conclusion that the evidence is irrelevant, it actually advances the conclusion that the information might, indeed, be relevant. As the court in *Hoffart* observed, "[h]abit evidence is

*relevant* because such evidence makes it more probable that the person acted in a manner consistent with that habit." *Id.* at 404 (emphasis added). Because the evidence challenged herein is relevant, and because the *Wipf* decision allows discovery of non-identifying medical information, I would hold that the third-party medical records are discoverable.

[¶63.] The circuit court did not abuse its discretion by granting the motion to compel discovery. It ordered a specific, redacted, protected, and limited production of Dr. Thaemert's surgical records involving anterior spinal fusions in order to show his general practice (habit), or lack thereof, for obtaining informed consent during his patient consultations for these surgeries. The information that the circuit court ordered be released as part of discovery was—at a minimum—reasonably calculated to lead to the discovery of admissible evidence.